ROADWAY EXPRESS, INC. *v.* PIPER ET AL.

No. 79–701.  Argued April 15, 1980—Decided June 23, 1980

POWELL, J., delivered the opinion of the Court, in which BRENNAN, WHITE, and MARSHALL, JJ., joined; in Parts I, II, and IV of which STEWART and REHNQUIST, JJ., joined; in all but Part II–A and the first sentence of Part IV of which BLACKMUN, J., joined; and in Part II–B of which STEVENS, J., joined. BLACKMUN, J., *post*, p. 768, and STEVENS, J., *post*, p. 769, filed opinions concurring in part and dissenting in part. BURGER, C. J., filed a dissenting opinion, *post*, p. 771.

*Miles Curtiss McKee* argued the cause for petitioner. With him on the briefs was *Armin J. Moeller, Jr.*

*Herschel E. Richard, Jr.,* argued the cause and filed a brief for respondents.

*Harriet S. Shapiro* argued the cause for the United States et al. as *amici curiae* urging affirmance. With her on the brief were *Solicitor General McCree, Assistant Attorney General Days, Leroy D. Clark, Joseph T. Eddins, Lutz Alexander Prager,* and *Raymond R. Baca.**

MR. JUSTICE POWELL delivered the opinion of the Court.

This case presents the question whether federal courts have statutory or inherent power to tax attorney's fees directly against counsel who have abused the processes of the courts.

## I

In June 1975, two former employees and one unsuccessful job applicant brought a civil rights class action against petitioner Roadway Express, Inc. (Roadway). The complaint filed in the United States District Court for the Western District of Louisiana alleged that Roadway's employment policies discriminated on the basis of race, and asked for equitable relief.[1]

Counsel for the plaintiffs—Robert E. Piper, Jr., Frank E. Brown, Jr., and Bobby Stromile—are the respondents in the present case. In September 1975, respondents served interrogatories on Roadway. Having secured an extension from the District Court, Roadway answered the interrogatories on January 5, 1976, and served its own set of interrogatories at the same time. Thereafter, however, the litigation was stalled by respondents' uncooperative behavior.

---

*Jack Greenberg* and *James M. Nabrit III* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae* urging affirmance.

[1] The initial complaint also named a local of the International Brotherhood of Teamsters as defendant.

On April 13, 1976, Roadway moved for an order compelling answers to its interrogatories. The motion was set for argument on the morning of April 21, but counsel for the plaintiffs did not appear. They did attend a rescheduled hearing that afternoon, and the Magistrate ordered that the interrogatories be answered by May 24. Respondents ignored that deadline and, in fact, never answered the interrogatories. Roadway also served notice in April that it would take depositions from all three plaintiffs in early May. One of the plaintiffs did not appear on the appointed days, however, and he never was deposed.

The respondents showed no greater respect for the orders of the District Court than for the requests of their adversaries. On April 7, the court instructed counsel for both sides to file briefs evaluating the impact of a recent decision in a related case. Although respondents' brief was due within 10 days, nothing arrived for six weeks. On May 19, the District Court gave respondents 10 additional days to file a brief or face dismissal of the action. No brief was ever submitted.

On June 14, Roadway moved to dismiss the suit under Federal Rule of Civil Procedure 37.[2] Roadway also requested an award of attorney's fees and court costs. On June 30, the District Court heard argument and dismissed the action with prejudice. A second hearing, limited to the question of costs and attorney's fees, was held in October 1976.

The District Court's opinion sharply criticized the respondents for their "deliberate inaction" in handling the case. *Monk* v. *Roadway Express, Inc.*, 73 F. R .D. 411, 417 (1977). Observing that respondents apparently had not advised their

---

[2] If a party "fails to obey an order to provide or permit discovery," Rule 37 (b) (2) (C) allows the district court to "dismis[s] the action or proceeding or any part thereof, or rende[r] a judgment by default against the disobedient party." Rule 37 (b) (2) (E) also permits a court to "require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure. . . ."

clients that the suit was a class action, *id.,* at 414, 417, the court concluded that the three lawyers "improvidently enlarged and inadequately prosecuted" the action, *id.,* at 417. As a sanction, the court ordered them to pay Roadway's costs and attorney's fees for the entire lawsuit. The total assessment exceeded $17,000. *Monk* v. *Roadway Express, Inc.,* 599 F. 2d 1378, 1381 (CA5 1979).

The District Court found justification for its ruling in the confluence of several statutes. The civil rights statutes allow the prevailing party to recover attorney's fees "as part of the costs" of litigation. See 42 U. S. C. §§ 1988, 2000e–5 (k). And 28 U. S. C. § 1927 permits a court to tax the excess "costs" of a proceeding against a lawyer "who so multiplies the proceedings . . . as to increase costs unreasonably and vexatiously. . . ."[3] Read together, the District Court concluded, the statutes authorize the assessment of costs and attorney's fees against respondents.

The United States Court of Appeals for the Fifth Circuit found no clear error in the ruling that respondents had violated § 1927. 599 F. 2d, at 1381. The appellate court held, however, that respondents were not liable for attorney's fees. It rejected the District Court's view that the civil rights statutes can be read into § 1927. The civil rights laws, the court wrote, "provide for attorneys' fees awards against unsuccessful *parties* to a suit, and they focus on actions which are frivolous, unreasonable, and baseless. . . ." 599 F. 2d, at

---

[3] Section 1927 states in full:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

As the Court of Appeals pointed out, "§ 1927 provides only for *excess* costs caused by the plaintiffs' attorneys' vexatious behavior and consequent multiplication of the proceedings, and not for the total costs of the litigation." *Monk* v. *Roadway Express, Inc.,* 599 F. 2d 1378, 1383 (CA5 1979) (emphasis in original).

1383 (emphasis in original). In contrast, § 1927 deals only with attorney conduct and involves taxing costs against counsel. The Court of Appeals vacated the District Court's order and remanded for recalculation of costs under § 1927. We granted certiorari, 444 U. S. 1012 (1980).

## II

This case involves the problem of what sanctions may be imposed on lawyers who unreasonably extend court proceedings.[4] Two specific provisions have been said to be controlling in this case: 28 U. S. C. § 1927, and Federal Rule of Civil Procedure 37. This opinion considers both provisions.

## A

Section 1927 provides that lawyers who multiply court proceedings vexatiously may be assessed the excess "costs" they create. The provision, however, does not define the critical word. Only if "costs" includes attorney's fees can § 1927 support the sanction in this case.

Courts generally have defined costs under § 1927 according to 28 U. S. C. § 1920, which enumerates the costs that ordinarily may be taxed to a losing party. *E. g., United States* v. *Ross,* 535 F. 2d 346, 350 (CA6 1976); *Kiefel* v. *Las Vegas Hacienda, Inc.,* 404 F. 2d 1163, 1170 (CA7 1968), cert. denied *sub nom. Hubbard* v. *Kiefel,* 395 U. S. 908 (1969).

---

[4] Due to sloth, inattention, or desire to seize tactical advantage, lawyers have long indulged in dilatory practices. Cf. C. Dickens, Bleak House 2–5 (1948). A number of factors legitimately may lengthen a lawsuit, and the parties themselves may cause some of the delays. Nevertheless, many actions are extended unnecessarily by lawyers who exploit or abuse judicial procedures, especially the liberal rules for pretrial discovery. See Burger, Agenda for 2000 A. D.—A Need for Systematic Anticipation, 70 F. R. D. 83, 95–96 (1976); ABA, Report of Pound Conference Follow-Up Task Force, 74 F. R. D. 159, 191–192 (1976); U. S. Dept. of Justice, C. Ellington, A Study of Sanctions for Discovery Abuse 117 (1979). The glacial pace of much litigation breeds frustration with the federal courts and, ultimately, disrespect for the law.

Section 1920 lists clerk's and marshal's fees, court reporter charges, printing and witness fees, copying costs, interpreting costs, and the fees of court-appointed experts. Section 1920 also permits the assessment of the attorney "docket" fees set by 28 U. S. C. § 1923. In this case, that fee is $20. 28 U. S. C. § 1923 (a).

Roadway insists, however, that its recovery should not be restricted to the costs listed in § 1920. It argues that since courts look to § 1920 to determine the costs taxable under § 1927, they should be equally free to define costs according to other statutes that may be involved in a lawsuit. Roadway emphasizes that the civil rights statutes allow the award of attorney's fees "as part of the costs" of the litigation. 42 U. S. C. § 2000e–5 (k); 42 U. S. C. § 1988.[5] Accordingly, Roadway asks that we reinstate the District Court's award. This superficially appealing argument cannot survive careful consideration.

---

[5] Section 2000e–5 (k) states: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

Section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceedings [to enforce] a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

For the purposes of the issues in this opinion, the two provisions may be considered to have the same substantive content. See *Lopez* v. *Arkansas County Independent School Dist.*, 570 F. 2d 541, 545 (CA5 1978); *Mid-Hudson Legal Services, Inc.* v. *G & U, Inc.*, 578 F. 2d 34, 37–38 (CA2 1978). They authorize fee awards in identical language, and Congress acknowledged the close connection between the two statutes when it approved § 1988. S. Rep. No. 94–1011, pp. 2–6 (1976); H. R. Rep. No. 94–1558, pp. 5–8 (1976).

### 1

Congress enacted the first version of § 1927 in 1813. It was drafted by a Senate Committee appointed "to inquire what Legislative provision is necessary to prevent multiplicity of suits or processes, where a single suit or process might suffice. . . ." 26 Annals of Cong. 29 (1813). The resulting legislation provided in part that any person who "multiplied the proceedings in any cause . . . so as to increase costs unreasonably and vexatiously" could be held liable for "any excess of costs so incurred." Act of July 22, 1813, 3 Stat. 21. The sparse legislative history makes this provision difficult to interpret.[6]

In construing "costs," however, we may look to the contemporaneous understanding of the term. Cf. *Gilbert* v. *United States*, 370 U. S. 650, 655 (1962). In 1796 the Court decided *Arcambel* v. *Wiseman*, 3 Dall. 306. That ruling overturned an award of counsel fees on the ground that "[t]he general practice of the *United States* is in op[p]osition to it." *Ibid.* Thus, the Court recognized the "American rule" that attorney's fees ordinarily are not among the costs that a winning party may recover. See *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U. S. 714, 717–718 (1967). We may assume that Congress followed that rule when it approved the 1813 Act.

Congress returned to the problems of the federal courts in 1853, when it approved a comprehensive measure setting the fees and costs for all federal actions. Act of Feb. 26, 1853, 10 Stat. 162; see *Alyeska Pipeline Co.* v. *Wilderness Society*, 421 U. S. 240, 251–253 (1975). Some of those provisions survive, largely intact, in 28 U. S. C. §§ 1920 and 1923. See

---

[6] A letter from the Secretary of the Treasury to the House of Representatives in 1842 suggests that the provision was prompted by the practices of certain United States Attorneys. H. R. Doc. No. 25, 27th Cong., 3d Sess., 21–22 (1842). Some of those officers, who were paid on a piecework basis, apparently had filed unnecessary lawsuits to inflate their compensation.

10 Stat. 161–162, 168. The 1853 statute also substantially re-enacted the earlier provision that allows lawyers who multiply legal proceedings to be taxed with the extra "costs" they generate. That provision, now codified as § 1927, has remained basically unchanged since 1853.[7]

This history suggests that § 1920 and § 1927 should be read together as part of the integrated statute approved in 1853. See *Erlenbaugh* v. *United States,* 409 U. S. 239, 243–244 (1972); 2A C. Sands, Sutherland on Statutory Construction § 51.03, p. 299 (4th ed. 1973). The 1853 Act specified the costs recoverable in federal litigation and also allowed the award of excess "costs" against counsel who vexatiously multiply litigation. The most reasonable construction is that the Act itself defined those costs that may be recovered from counsel. Congress, of course, may amend those provisions that derive from the 1853 Act.[8] In the absence of express modification of those provisions by Congress, however, we should not look beyond the Act for the definition of costs under § 1927.

The available legislative material supports this view. Congress in 1853 prescribed taxable costs for the same reasons it authorized the assessment of costs against dilatory attorneys: "[T]o prevent abuses arising from ingenious constructions . . . to discourage unnecessary prolixity, old useless forms, and the multiplication of proceedings, and the prosecutions of several suits which might better be joined in one."

---

[7] The attorney liability portion of the 1853 Act was codified as § 982 of the Revised Statutes, while the cost-setting portions were included as §§ 823 and 824. The portions assumed their present positions at §§ 1920, 1923, and 1927 of Title 28 in the Revised Code of 1948. See 28 U. S. C. §§ 1920, 1923, 1927 (1946 ed., Supp. II).

[8] For example, in 1978 Congress added 28 U. S. C. § 1920 (6) (1976 ed., Supp. II), providing for recovery of interpreting costs. Pub. L. 95–539, § 7, 92 Stat. 2044. Congress is now considering legislation that would expand § 1927 in all cases to include "costs, expenses and attorney's fees. . . ." H. R. 4047, 96th Cong., 1st Sess. (1979); S. 390, 96th Cong., 1st Sess., § 4 (1979).

H. R. Rep. No. 50, 32d Cong., 1st Sess., 6 (1852); see also *Alyeska Pipeline Co.* v. *Wilderness Society, supra,* at 251–253. Above all, Congress sought to standardize the treatment of costs in federal courts, to "make them uniform—make the law explicit and definite." H. R. Rep. No. 50, *supra,* at 6. The sponsor of the legislation spoke of the need for "uniform rule[s]," Cong. Globe, 32d Cong., 2d Sess., App. 207 (1853) (Sen. Bradbury), while other Senators agreed that the legislation was designed to impose "uniformity," *id.,* at 584 (Sen. Bayard); see also *id.,* at 589 (Sen. Geyer).

Roadway presses us to abandon the uniform approach of the 1853 Act. Because prevailing parties now may recover counsel fees in civil rights suits, Roadway argues that the statutes authorizing those recoveries should be read to modify § 1927. But Roadway offers no evidence that Congress intended to incorporate those attorney's fee provisions into § 1927. Neither § 1988 nor § 2000e–5 (k) makes any mention of attorney liability for costs and fees. Roadway identifies nothing in the legislative records of those provisions that suggests that Congress meant to control the conduct of litigation.[9] Without any evidence that Congress wished to alter the uniform structure established by the 1853 Act, we are reluctant to disrupt it. See *Fleischmann Distilling Corp.* v. *Maier Brewing Co., supra,* at 719–720.

2

The statutory interpretation proposed by Roadway not only runs counter to the apparent intent of Congress in 1813 and 1853, but also could introduce into the statute distinctions unrelated to its goal. Indeed, Roadway's argument could result in virtually random application of § 1927 on the basis of other

---

[9] The Senate Report accompanying § 1988 stated that the bill authorizes "an award of attorneys' fees against a *party.* . . ." S. Rep. No. 94–1011, p. 5 (1976) (emphasis supplied). This reference reinforces the view that the statute was not intended to permit recovery from opposing counsel.

laws that do not address the problem of controlling abuses of judicial processes.

The fee provisions of the civil rights laws are acutely sensitive to the merits of an action and to antidiscrimination policy. Unlike § 1927, both § 1988 and § 2000e–5 (k) restrict recovery to prevailing parties. In addition, those provisions have been construed to treat plaintiffs and defendants somewhat differently. Prevailing plaintiffs in civil rights cases win fee awards unless "special circumstances would render such an award unjust," *Newman* v. *Piggie Park Enterprises*, 390 U. S. 400, 402 (1968) (*per curiam*), but a prevailing defendant may be awarded counsel fees only when the plaintiff's underlying claim is "frivolous, unreasonable, or groundless." *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412, 422 (1978). This distinction advances the congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation.

But § 1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes. Dilatory practices of civil rights plaintiffs are as objectionable as those of defendants. In order to assess counsel fees against respondents under § 1927, the Court would have to adopt one of two alternatives. It could incorporate into § 1927 the normative considerations of the civil rights laws that are foreign to the 1813 enactment. Or the Court could select on an ad hoc basis those features of § 1988 and § 2000e–5 (k) that should be read into § 1927. The first course would alter fundamentally the nature of § 1927; the second would constitute standardless judicial lawmaking.

Moreover, Roadway's statutory construction would create a two-tier system of attorney sanctions. A number of federal statutes permit the award of attorney's fees. See *Alyeska*

*Pipeline Co.* v. *Wilderness Society,* 421 U. S., at 260, n. 33. Under Roadway's view of § 1927, lawyers in cases brought under those statutes would face stiffer penalties for prolonging litigation than would other attorneys. There is no persuasive justification for subjecting lawyers in different areas of practice to differing sanctions for dilatory conduct. A court's processes may be as abused in a commercial case as in a civil rights action. Without an express indication of congressional intent, we must hesitate to reach the imaginative outcome urged by Roadway, particularly when a more plausible construction flows from the original enactments in 1813 and 1853. To avoid the arbitrary results of Roadway's argument, *Commissioner* v. *Brown,* 380 U. S. 563, 571 (1965), citing *Helvering* v. *Hammel,* 311 U. S. 504, 510–511 (1941), we must reject the claim that § 1988 and § 2000e–5 (k) may supplant the framework established by the 1853 Act.

## B

Federal Rule of Civil Procedure 37 (b) authorizes sanctions for failure to comply with discovery orders. The District Court may bar the disobedient party from introducing certain evidence, or it may direct that certain facts shall be "taken to be established for the purposes of the action. . . ." The Rule also permits the trial court to strike claims from the pleadings, and even to "dismiss the action . . . or render a judgment by default against the disobedient party." See *National Hockey League* v. *Metropolitan Hockey Club,* 427 U. S. 639 (1976) *(per curiam); Dellums* v. *Powell,* 184 U. S. App. D. C. 339, 566 F. 2d 231 (1977). Both parties and counsel may be held personally liable for expenses, "including attorney's fees," caused by the failure to comply with discovery orders.[10] Rule 37 sanctions must be applied diligently

---

[10] See *Stanziale* v. *First National City Bank,* 74 F. R. D. 557 (SDNY 1977) (attorneys); *Charron* v. *Meaux,* 66 F. R. D. 64 (SDNY 1975) (party); *Chesa International, Ltd.* v. *Fashion Associates, Inc.,* 425 F.

both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League* v. *Metropolitan Hockey Club, supra,* at 643.

The respondents in this case never have complied with the District Court's order that they answer Roadway's interrogatories. That failure was the immediate ground for dismissing the case, 73 F. R. D., at 412, and it also exposed respondents and their clients to liability under Rule 37 (b) for the resulting costs and attorney's fees. Indeed, Roadway's motion for dismissal sought recovery of those expenses under Rule 37. On the remand of this action, the District Court will have the authority to act upon that request.

## III

Roadway also contends that the District Court's ruling was a proper exercise of the court's inherent powers.[11] The inherent powers of federal courts are those which "are necessary to the exercise of all others." *United States* v. *Hudson,* 7 Cranch 32, 34 (1812). The most prominent of these is the contempt sanction, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court. . . ." *Cooke* v. *United States,* 267 U. S. 517, 539 (1925); see 4 W. Blackstone, Commentaries *282–*285. Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion. See *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418,

---

Supp. 234 (SDNY), aff'd, 573 F. 2d 1288 (CA2 1977) (joint liability of attorney and party).

[11] MR. JUSTICE STEWART and MR. JUSTICE REHNQUIST would not reach the inherent power question considered in Part III of the opinion. Rather, they view that question as a substantial issue that should be addressed by the District Court on remand.

450–451 (1911); *Green* v. *United States,* 356 U. S. 165, 193–194 (1958) (Black, J., dissenting). There are ample grounds for recognizing, however, that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel.

In *Link* v. *Wabash R. Co.,* 370 U. S. 626, 632 (1962), this Court recognized the "well-acknowledged" inherent power of a court to levy sanctions in response to abusive litigation practices. The trial court had dismissed an action for failure to prosecute. Mr. Justice Harlan wrote for the Court:

> "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of *nonsuit* and *non prosequitur* entered at common law, *e. g.,* 3 Blackstone, Commentaries (1768), 295–296, and dismissals for want of prosecution of bills in equity, *e. g., id.,* at 451." *Id.,* at 629–630 (footnote omitted).

The Court denied that Federal Rule of Civil Procedure 41 (b) limits a court's power to dismiss for failure to prosecute to instances where a defendant moves for dismissal. The Court wrote: "The authority . . . to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs. . . ." 370 U. S., at 630. Since the assessment of counsel fees is a less severe sanction than outright dismissal, *Link* strongly supports Roadway's contention here.

Of course, the general rule in federal courts is that a litigant cannot recover his counsel fees. See *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S., at 257. But that rule does

not apply when the opposing party has acted in bad faith. In *Alyeska,* we acknowledged the "inherent power" of courts to

> "assess attorneys' fees for the 'willful disobedience of a court order . . . as part of the fine to be levied on the defendant[,] *Toledo Scale Co.* v. *Computing Scale Co.,* 261 U. S. 399, 426–428 (1923),' *Fleischmann Distilling Corp.* v. *Maier Brewing Co., supra,* at 718; or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .' *F. D. Rich Co.* [v. *United States ex rel. Industrial Lumber Co.*], 417 U. S. [116], at 129 [(1974)] (citing *Vaughan* v. *Atkinson,* 369 U. S. 527 (1962))." *Id.,* at 258–259.

The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith. " '[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall* v. *Cole,* 412 U. S. 1, 15 (1973). See *Browning Debenture Holders' Comm.* v. *DASA Corp.,* 560 F. 2d 1078, 1088 (CA2 1977). This view coincides with the ruling in *Link, supra,* which approved judicial power to dismiss a case not because the substantive claim was without merit, but because the plaintiff failed to pursue the litigation.

The power of a court over members of its bar is at least as great as its authority over litigants.[12] If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif. L. Rev. 264, 268

---

[12] See generally *In re Bithoney,* 486 F. 2d 319 (CA1 1973); *Flaksa* v. *Little River Marine Constr. Co.,* 389 F. 2d 885, 888–889 (CA5), cert. denied, 392 U. S. 928 (1968); *Gamble* v. *Pope & Talbot, Inc.,* 307 F. 2d 729, 735–736 (CA3) (en banc) (Biggs, C. J., dissenting), cert. denied *sub nom. United States District Court* v. *Mahoney,* 371 U. S. 888 (1962).

(1979).[13]  Like other sanctions, attorney's fees certainly
should not be assessed lightly or without fair notice and an
opportunity for a hearing on the record.[14]  But in a proper
case, such sanctions are within a court's powers.

## IV

We affirm the ruling of the Court of Appeals on § 1927.
Since the District Court did not consider the costs and fees
that Roadway might recover under Rule 37, that question
must be addressed on remand.  Similarly, the trial court did
not make a specific finding as to whether counsel's conduct in
this case constituted or was tantamount to bad faith, a find-
ing that would have to precede any sanction under the court's
inherent powers.  The case is remanded to the Court of

---

[13] New York courts have ordered attorneys who delay litigation to pay
costs or fines to the opposing party.  *E. g., Moran* v. *Rynar,* 39 App. Div.
2d 718, 332 N. Y. S. 2d 138 (1972); *Kahn* v. *Stamp,* 52 App. Div. 2d 748,
382 N. Y. S. 2d 199 (1976); *Gillet* v. *Beth Israel Medical Center,* 99
Misc. 2d 172, 415 N. Y. S. 2d 738 (Sup. Ct. 1979).  The state-court
opinions cite no statutory authority for their holdings, apparently relying
on the inherent powers of those courts.  *Moran* v. *Rynar, supra,* noted
favorable commentary on *Schwarz* v. *United States,* 384 F. 2d 833, 836
(CA2 1967), which suggested that courts faced with cases "of inexcusable
neglect by counsel [should consider] imposing substantial costs and attor-
ney's fees payable by offending counsel personally to the opposing
party. . . ."  Although the New York courts have sanctioned lawyers for
mere negligence, this opinion addresses only bad-faith conduct.

[14] Some due process implications of sanctions for misconduct of litiga-
tion were discussed in *Societe Internationale* v. *Rogers,* 357 U. S. 197, 208–
212 (1958), which reversed the dismissal of an action for failure to com-
ply with a pretrial discovery order.  The due process concerns posed by
an outright dismissal are plainly greater than those presented by assessing
counsel fees against lawyers.  Cf. *Schwarz* v. *United States, supra.*  More-
over, *Societe Internationale* did not involve willful misconduct or bad faith.
The Court found that the party whose claim was dismissed had been barred
by a Swiss criminal statute from complying with the order.  357 U. S.,
at 209, 211.

Appeals with directions to return it to the District Court for proceedings consistent with this opinion.

*So ordered.*

MR. JUSTICE BLACKMUN, concurring in part and dissenting in part.

I join the Court's opinion except Part II–A thereof and except the first sentence of Part IV thereof.

Essentially for the reasons stated in the first three paragraphs of the respective opinions of THE CHIEF JUSTICE and of MR. JUSTICE STEVENS, I do not join Part II–A. I add to those reasons my concern that the Court's analysis means that 28 U. S. C. § 1927 does not permit imposition on opposing counsel of "excess" attorney's fees generated by his vexatiousness and otherwise shifted to his client under 42 U. S. C. § 2000e–5 (k), 42 U. S. C. § 1988, or any other specialized attorney's fees provisions. See *Alyeska Pipeline Co.* v. *Wilderness Society,* 421 U. S. 240, 260, n. 33 (1975) (collecting statutes). This construction of the statute penalizes the innocent client, while insulating his wrongdoing attorney. That result, in my view, clashes with common sense, basic fairness, and the plain meaning of the statute. See *Owen* v. *City of Independence,* 445 U. S. 622, 654 (1980) ("Elemental notions of fairness dictate that one who causes a loss should bear the loss"). See also 122 Cong. Rec. 31832 (1976) (regarding proposed § 1988: "Mr. ABOUREZK. So if somebody thought, some lawyer thought, he was going to make a lot of money by bringing civil rights suits *he would be subject to being penalized himself;* is that not correct? Mr. HATHAWAY. The Senator is correct") (emphasis added).[1]

---

[1] One point regarding the Court's analysis of § 1927 seems to me to merit special mention. In rejecting the District Court's reading of that statute, the Court concludes that "a prevailing defendant may be awarded counsel fees *only* when the plaintiff's underlying claim is 'frivolous, unreasonable, or groundless.'" *Ante,* at 762 (emphasis added), citing *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412, 422 (1978). This state-

Significantly different considerations of policy and fairness bear on the inherent-power issue addressed in Part III of the Court's opinion. I believe, however, that the opinion marshals persuasive reasons for recognizing a component of the bad-faith exception of the American Rule authorizing recovery of attorney's fees directly from a vexatious opposing counsel.[2]

MR. JUSTICE STEVENS, concurring in part and dissenting in part.

By its terms, 28 U. S. C. § 1927 applies to "cases in any court of the United States" and allows the recovery of excess costs from "[a]ny attorney" who vexatiously multiplies the proceedings "in any case."[1] This language is broad enough to encompass a civil rights class action alleging racial discrim-

_____

ment has two troubling implications. First, it would seem to pretermit the § 1927 issue, which the Court goes on to consider at length. Clearly, the District Court based its attorney's fee award on counsel's conduct during the suit, rather than on the absence of a meritorious claim. If only the latter can support fee-shifting under § 1988 or § 2000e–5 (k), attorney's fees were not "reasonable" in the first place, the predicate for applying § 1927 was lacking, and this case presents no occasion to construe that provision. Second, the Court's reading of *Christiansburg Garment* is a questionable one that may produce undesirable results in future cases. *Christiansburg Garment* simply did not present the issue whether "frivolous, unreasonable, or groundless" *conduct* by a plaintiff in the course of prosecuting a colorable claim might justify fee-shifting in favor of the defendant under § 1988 or § 2000e–5 (k). In my view, there are strong arguments that attorney's fees generated by such conduct would be "reasonable" within the meaning of those statutes. I am troubled that the Court reaches the opposite conclusion without explaining why.

[2] The Court does not explore the specific features of this exception. Most significantly, it does not address the permissibility of applying this new exception to award attorney's fees beyond those actually attributable to the culpable attorney's vexatious actions (*i. e.,* "excess costs" under § 1927). Like the Court, I am willing to let this issue be considered in the first instance on the remand.

[1] See *ante,* at 756, n. 3.

ination in employment. Two separate statutes specifically authorize the recovery of attorney's fees "as part of the costs" in this kind of litigation.[2] Of course, such fees, like any other cost items, are normally recoverable only from the losing litigant rather than from the attorney personally. But it seems to me that § 1927 gives the court the power to assess against counsel any item of cost that could be assessed against a party when that attorney unreasonably and vexatiously multiplies the proceedings.

The Court seems concerned about the fact that the standards for allowing a *party* to recover fees differ for plaintiffs and defendants in civil rights litigation. *Ante,* at 762. I simply do not understand the relevance of that concern. As I read § 1927, the sanction may be applied to an obstreperous lawyer regardless of whether his client prevails, so long as fees may be awarded as part of the costs in the litigation.

The Court also states that there "is no persuasive justification" for subjecting lawyers in different areas of practice to the risk of differing sanctions. *Ante,* at 763. But Congress has made a legislative decision to treat lawyers in civil rights litigation differently than they are treated in most types of litigation. Because of that congressional determination, lawyers in these cases are more likely to be well paid than other lawyers and, conversely, their misconduct may subject their clients to liability for the fees of opposing counsel. A conclusion that such special treatment also subjects these lawyers to an additional risk for failing to observe the normal proprieties that obtain in litigation does not strike me as anomalous.

Ironically, the Court rejects my rather straightforward approach to the statutory language because it "would constitute standardless judicial lawmaking," *ante,* at 762, but then, in Part III of its opinion, embarks on a venture of its own that

---

[2] Title 42 U. S. C. § 1988 and § 2000e–5 (k) both authorize an award of attorney's fees to the prevailing party "as part of the costs" of the litigation.

surely fits that description neatly. Although a trial court has inherent contempt powers, I have the gravest doubts about its inherent power to order a lawyer to pay damages to an opposing litigant. Since it is not at all necessary to reach out to decide that issue, however, I would simply answer the statutory question presented by the certiorari petition.

Although I do not disagree with the Court's discussion of Rule 37 in Part II–B of its opinion, I respectfully dissent from its construction of § 1927 and its inherent-power holding.

Mr. Chief Justice Burger, dissenting.

I dissent from the Court's holding that it was improper for the District Court to look to 42 U. S. C. §§ 1988 and 2000e–5 (k) to determine whether attorney's fees were assessable as part of the excess costs which the respondent attorneys could be made to pay under 28 U. S. C. § 1927.

Section 1927 does not itself attempt to define the costs which an attorney may be forced to pay because of vexatious, dilatory tactics and conduct, except to state that the attorney may be forced to pay only the *excess* costs generated by his misconduct. One must look elsewhere to determine the types of costs which are assessable. It may be correct that ordinarily a court would look to 28 U. S. C. § 1920, which does not include attorney's fees among its enumerated items. But whether or not attorney's fees are recoverable as costs depends on the type of action involved. In *Hutto* v. *Finney,* 437 U. S. 678, 697 (1978), the Court noted that "there are a large number of statutory and common-law situations in which allowable costs include counsel fees." In a footnote, the Court observed: "In 1975, we listed 29 statutes allowing federal courts to award attorney's fees in certain suits. See *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S., at 260–261, n. 33. Some of these statutes define attorney's fees as an element of costs, while others separate fees from other taxable costs. Compare 42 U. S. C. § 2000a–3 (b) with 29 U. S. C. § 216 (b) (1970 ed., Supp. V)." *Id.,* at 697, n. 28.

Title 42 U. S. C. § 2000a–3 (b), in pertinent part, states that the court in its discretion "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ," whereas 29 U. S. C. § 216 (b) states that the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Comparing the language of these sections to that of 42 U. S. C. §§ 1988 and 2000e–5 (k) at issue here, it seems plain to me that §§ 1988 and 2000e–5 (k) fall within the first category—statutes which define attorney's fees as an element of costs. The Court said this in so many words in *Hutto* with regard to § 1988. 437 U. S., at 695.

Thus, by statute, in Title VII actions, or in actions to enforce 42 U. S. C. §§ 1981, 1983, 1985, and 1986, attorney's fees are an element of costs. Sections 1988 and 2000e–5 (k) state that the awards may be made to the prevailing party, as was the instant award. They do not state who is to bear the costs. Normally, of course, the losing party will bear the costs. But if the court finds that the costs have been increased "unreasonably and vexatiously," § 1927 empowers the court to make the errant attorneys themselves bear the excess costs occasioned by their misconduct. That is what happened here.

Respondents correctly point out that this Court has held in *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412 (1978), that if the award is against the plaintiff, the suit must be found to have been frivolous, unreasonable, or without foundation. But that case does not determine the standard for an award of excess costs against an attorney. Section 1927 itself provides that standard; the attorney must have so multiplied the proceedings as to have increased costs unreasonably and vexatiously. Here, both the District Court and the Court of Appeals agreed that that standard had been met.

Given this disposition, I would not reach the other issues decided by the Court today.