UNICURE, INC., Plaintiff,

v.

Robert THURMAN, et al., Defendants.

Jeremy D. NELSON, et al.,
Counterclaim-Plaintiffs,

v.

UNICURE, INC., Defendants on
Counterclaims,

Richard H. Tucker, Additional Defendant
on Counterclaims.

Jeremy D. NELSON, et al.,
Third-Party Plaintiffs,

v.

Robert THURMAN, et al., Third-Party
Defendants.

No. CIV–77–642.

United States District Court,
W.D. New York.

Sept. 29, 1982.

---

MEMORANDUM and ORDER

ELFVIN, District Judge.

This action was commenced by Unicure, Inc. ("Unicure") against Jeremy D. Nelson and Trafalgar Industries of Canada, Ltd. (collectively "Nelson") based on their alleged conversion or theft of Unicure's secret formula(e) and process(es) for the manufacture of hair and skin conditioner. Pursuant to Fed.R.Civ.P. rules 37 and 41, Nelson has moved for an order dismissing the Amended Complaint or for the imposition of other sanctions due to Unicure's failure to provide certain discovery as directed by an Order entered by me on consent of the parties February 22, 1982.

Nelson filed and served his first set of Interrogatories on Unicure and Richard H.

Tucker (who is President of Unicure and an additional defendant on Nelson's counterclaims) September 25, 1981 and his first request for production of documents October 26, 1981.[1] At that time, trial of this action was scheduled to begin in December, 1981. Unicure served but did not file answers to Nelson's first set of Interrogatories November 6, 1981. That same day, Nelson's attorney orally advised Unicure's local counsel that he believed Unicure's answers to the first set of Interrogatories were inadequate. In his affidavit in support of the current motion, Nelson's attorney states that Unicure's local counsel agreed to correct the deficiencies in the answers but this is denied in an affidavit by Unicure's local counsel. Also on November 6th, Nelson filed and served on Unicure and Tucker a second set of Interrogatories (relating to the fifth, sixth, seventh, eighth and tenth causes of action) and request for production of documents.

Nelson's attorney sent a letter dated November 17, 1981 both to Unicure's local counsel and to its in-house counsel advising them that he believed that Unicure's answers to Nelson's first set of Interrogatories were deficient and that he would supply a list of objections and comments shortly. He sent an eight-page letter dated December 3, 1981 in which he detailed his objections to Unicure's answers. After receiving no response from Unicure's attorneys, Nelson's counsel sent a third letter to Unicure's local and in-house counsel December 11th. By that time, Unicure's answers to Nelson's second set of Interrogatories and its responses to Nelson's first and second requests for documents were also overdue.[2] Therefore, Nelson's attorney indicated that, unless such discovery matters were resolved within ten days, he would move for the imposition of sanctions under Fed.R.Civ.P. rule 37.

These efforts by Nelson's attorney led to the entry of an Order on consent of the parties in lieu of a formal motion to compel. The Order (which was consented to by the parties February 5th and entered February 22nd) required Unicure to file its answers to Nelson's first set of Interrogatories on or before February 10th, to file and serve answers to Nelson's second set of Interrogatories on or before February 15th, to file and serve responses to Nelson's first and second requests for production of documents on or before March 1st and to produce documents pursuant to the requests by April 1st. Additionally, the Order required Unicure to "serve and file further answers to [Nelson's] First Set of Interrogatories, *based on the matters set forth in the December 11, 1981 letter from [Nelson's] counsel to [Unicure's] counsel* on or before March 1, 1982." (Emphasis added.)

As required by the consent Order, Unicure filed its answers to Nelson's first set of Interrogatories February 10th. Its answers to Nelson's second set of Interrogatories were served and filed February 16, 1982, one day later than required by the Order.[3]

---

1. Although the original Complaint in this action was filed November 30, 1977, Nelson's present counsel did not appear on his behalf until January, 1981. Between January and September, 1981 there was a series of motions relating to amendment of the pleadings and discovery.

   Paragraph 5 of the affidavit of Henry Killeen (Nelson's counsel), sworn to April 23, 1982 and submitted in support of the current motion, states that Nelson filed and served his first set of Interrogatories "together with a Demand for Production of Documents." However, the Interrogatories (docket item number 54) were filed and served September 25th and Nelson's first request for production of documents (docket item number 57) was filed and served October 26th.

2. Having been served November 6th, the second set of Interrogatories was required to be answered by December 7th. Fed.R.Civ.P. rules 33(a), 6(a). Unicure's responses to Nelson's first and second requests for production of documents were due November 25, 1981 and December 7, 1981, respectively. Fed.R.Civ.P. rules 34, 6(a).

3. The affidavit of Nelson's attorney in support of the current motion notes that, although the Interrogatories were addressed to both Unicure and Tucker, Unicure but not Tucker filed answers. Generally, Nelson's Interrogatories relate to the allegations made by Unicure in its Complaint and, to this extent, should realistically have only been addressed to Unicure. In any event, Unicure's answers have been sworn

**10**

Rather than filing supplementary answers to Nelson's first set of Interrogatories as it was required to do on or before March 1st, Unicure "clarified" its previous answers in a letter dated March 12th from its local counsel to Nelson's attorney. When Nelson's attorney objected that these supplementary answers were required to be sworn to and filed, Unicure filed formal answers April 2nd. Further supplementary or clarifying responses were provided by Unicure May 10th. Unicure filed responses to Nelson's first and second requests for production of documents March 8th, one week later than was required.

Nelson filed the current motion April 23rd based on Unicure's failure to provide discovery in accordance with the Order entered February 22nd. Primarily, he argues that Unicure has failed or refused to adequately answer Interrogatories relating to the nature and amount of its damages and its alleged trade secrets for the manufacture of hair and skin conditioner. After oral argument on the present motion, I filed a Memorandum and Order June 25th which granted a previous motion by Nelson to dismiss the fifth, sixth, seventh and eighth causes of action asserted in the Amended Complaint on the grounds that such claims are barred by applicable statutes of limitations.[4] To the extent that Nelson's current motion is based on Unicure's failure to provide discovery relating to the fifth, sixth, seventh and eighth causes of action, I regard such failure as having been mooted by said Order. Also, sanctions may not be imposed with respect to discovery items which have been provided by Unicure, albeit tardily, inasmuch as Nelson has not shown any actual prejudice resulting from any such delay.

Under Fed.R.Civ.P. rule 37(b)(2), a court may impose a variety of sanctions, including dismissal of the action, for failure to comply with an order compelling discovery. The sanctions are intended to secure compliance with discovery orders in a specific sense by penalizing those who fail to comply and in a general sense by deterring others who might be so inclined. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980); *Cine Forty-Second St. Theatre v. Allied Artists,* 602 F.2d 1062, 1066 (2d Cir.1979). Additionally, rule 37(b) seeks to assure that a party will not be able to benefit from his failure to provide discovery. *Cine Forty-Second St. Theatre v. Allied Artists, supra,* at 1066. The imposition of a particular sanction or sanctions is a matter committed to the discretion of the trial court. *Ins. Corp. of Ireland v. Compagnie Des Bauxites,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982); *National Hockey League v. Met. Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). However, the rule recognizes due process limitations on the court's discretion by requiring that the sanctions imposed be "just." *Ins. Corp. of Ireland v. Compagnie Des Bauxite, supra,* 456 U.S. at 707, 102 S.Ct. at 2107.

Fed.R.Civ.P. rule 41(b) similarly provides that the court may dismiss an action "for failure of the plaintiff to prosecute or to comply with these rules or any order of [the] court * * *."

The United States Court of Appeals for the Second Circuit has recognized that the imposition of sanctions for failure to provide discovery is "essential to the sound administration of justice." *Penthouse Intern., Ltd. v. Playboy Enterprises,* 663 F.2d 371, 392 (2d Cir.1981). *See, also, Lyell Theatre Corporation v. Loews Corporation,* 682 F.2d 37, 42 (2d Cir.1982) (the authority to dismiss for failure to prosecute "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts"). Thus, a party's bad faith

---

to by Tucker and I regard the answers as equally binding on both Unicure and Tucker.

**4.** The fifth, sixth, seventh and eighth causes of action concern alleged interference in Unicure's banking relationship, failure to disclose Unicure's secret formula to Unicure after its purchase by Unicure, conversion of Unicure's books and records and misrepresentations made to Unicure's customers.

or gross negligence in failing to comply with a court order to provide discovery may justify imposing even the harshest of sanctions under rule 37 and/or rule 41—dismissal of the action or entry of a default judgment. *Penthouse Intern., Ltd. v. Playboy Enterprises, supra* at 387; *Cine Forty-Second St. Theatre v. Allied Artists, supra* at 1066–67; *T.E. Quinn Truck Lines v. Boyd, Weir & Sewell,* 91 F.R.D. 176, 178 (W.D.N.Y.1981). Our Court of Appeals has to some extent even encouraged imposition of severe sanctions, stating that "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where * * * they are clearly warranted." *Cine Forty-Second St. Theatre v. Allied Artists, supra* at 1068.

Interrogatory 24 of Nelson's first set of Interrogatories to Unicure seeks information relating to Unicure's claim for $25,000,000 in damages arising out of the alleged theft of its secret formulae. The Interrogatory asks Unicure to "separately identify each item of damage, state the amount of damage claimed for each such item and, for each such item, set forth the computations and method of calculation used to arrive at each such amount" and to describe any actions taken to mitigate such damages. Unicure answered Interrogatory 24 by stating:

"(a) The claim for damages is based on Defendant's breach of the law of trade secrets and breach of licensing duty and damages will be requested for wrongful appropriation of the trade secret, loss of profit to Plaintiff and recovery back of profits of Defendant resulting from the misappropriation of trade secrets.

"(b) Other than commencing and prosecuting this action, Plaintiff was helpless to mitigate or reduce the amount of damage."

Nelson's attorney objected that this answer was totally inadequate in both his November 17th and December 3rd letters to Unicure's attorneys.

In its "clarifying" answers filed April 2nd in response to Nelson's attorney's December 3rd letter, Unicure stated that it had provided "some additional information" regarding calculation of its damages in its answers to Nelson's second set of Interrogatories and that it would further amend its answers "at such time as an expert is retained and the appropriate computations have been made." Contrary to its assertion, Unicure's answers to the second set of Interrogatories provide no substantive information concerning its claims for damages. Rather, its answers merely state that it "is in the process of researching and compiling information and data on the question of damages." Additionally, Unicure's said answers state that it is preparing Interrogatories and requests for production of documents to obtain information, presumably from Nelson, relevant to the amount of its damages.

Unicure's answers to Nelson's Interrogatories concerning the amount of its damages are wholly inadequate. Although Unicure claims that it has sustained $25,000,000 in damages as a result of Nelson's alleged theft of its trade secrets, its answers fail to provide even a shred of meaningful information as to its computation of such amount.

Unicure attempts to justify its failure to provide discovery concerning the amount of its damages on several grounds. First, it states that computation of its damages will require hiring an expert (i.e., an accountant) who presumably would testify at trial. Unicure's in-house counsel has submitted an affidavit to the effect that, in a desire to avoid excessive and/or duplicative fees for such an expert, Unicure wishes to delay hiring the expert until shortly before trial. Unicure indicates that it will provide discovery regarding its damages once the expert completes his or her calculations. Furthermore, Unicure states that it will require certain discovery of its own before the amount of its damages can be ascertained. I find that there are serious questions concerning the credibility and good faith bases for these contentions. Moreover, Unicure's purported justifications would not in any event support its total failure to provide discovery regarding its damages.

In the first place, Unicure should be able to provide basic information concerning its claim for damages without hiring an expert or conducting any discovery of its own. A complaint must be based on allegations made in good faith. *See, e.g., Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 56–57 (E.D.N.Y.1979). At a bare minimum, Unicure must provide information sufficient to demonstrate that in fact its claim for $25,000,000 in damages for theft of trade secrets has been made in good faith.

During a deposition conducted April 26, 1979, Tucker testified that Unicure's claim for damages for theft of trade secrets was based on calculations which had been made by its accountant, one Mary Beal.[5] Beal is no longer employed by Unicure, but her computations, or at least the information and records on which they are based, must still be available to Unicure. Although Beal's calculations are now several years old and would have to be updated by Unicure, they would nevertheless provide Nelson with at least some of the information which he is seeking to discover.[6] Moreover, even if Unicure does intend to retain an expert witness with respect to the amount of its damages, there is simply no reason why it cannot or should not provide to Nelson the basic information which it will present to the expert. If Unicure were unable to provide such basic information regarding its claim for damages, one could only conclude that its claim has not been made in good faith.

Litigation of the sort involved here is costly and burdensome and Unicure's desire to minimize the amount of expenses which it incurs in hiring an expert is certainly understandable. However, I see no reason why an expert would be required to provide some of the information which Nelson seeks. Moreover, Unicure's management and its attorneys are not naive. Maintaining a lawsuit may be costly, but it is also a serious matter which Unicure has treated too lightly. When it elected to commence this lawsuit, Unicure implicitly assumed the financial burdens which the action's prosecution requires. Redress for injuries which have been sustained by a plaintiff may be costly, but defendants also have rights and interests which must be protected. This is particularly true where the amount of damages which is claimed is as substantial as in this case: Indeed, the cost of retaining an expert ("several thousand dollars," according to Unicure's in-house counsel) is trivial in comparison to the amount of damages which Unicure seeks to recover ($25,000,-000).

Nor am I persuaded that Unicure cannot be expected to provide answers to Nelson's Interrogatories because it must conduct certain discovery. In the past, Unicure has represented to the court that it was ready to proceed to trial and that it had essentially completed its discovery.[7] Unicure attempts to explain this inconsistency between its prior representations and its current argument by noting that it did not learn that Nelson had possession of certain sales invoices until February, 1982. Unicure's in-house counsel also states in his affidavit in opposition to Nelson's motion that Unicure had previously been willing to forego production and examination of these documents in order to expedite trial.

Counsel's attempt to explain Unicure's position is extremely suspect. If sales invoices in the possession of Nelson are so important that Unicure cannot provide any information regarding its damages without

---

**5.** Tucker indicated that he personally had no knowledge of the amount of Unicure's damages.

**6.** Unicure also seeks to downplay the significance of Beal's calculations by noting that she is not a Certified Public Accountant and that her computations would not be "reliable evidence" of the amount of Unicure's damages. At this point, Nelson is merely seeking to determine the particular items included within Uni-

cure's claim for $25,000,000 in damages. At some other time, Nelson may seek discovery with respect to any expert witnesses on which Unicure may intend to rely at trial. Fed.R. Civ.P. rule 26(b)(4).

**7.** Trial was scheduled to begin in December, 1981 but could not take place due to the unexpected length of another trial.

first examining the records, I cannot believe that Unicure would not have attempted to inspect such documents years ago. Certainly, Unicure would have determined through discovery whether Nelson did in fact possess sales invoices which might be relevant to its claims. I also find it incredible that Unicure would have proceeded to trial (as it expressed a desire to do) without having inspected documents which it now claims are so crucial. Counsel must have contemplated producing some sort of evidence on the issue of damages, and Nelson is entitled to discover such information. Unicure's purported need for discovery relating to its damages is undercut further by its failure to commence any such discovery to date.

Unicure also facilely suggests that Nelson has not been and can not be prejudiced by its failure to provide discovery on the issue of damages. Information concerning Unicure's damages is of obvious and considerable importance in enabling Nelson to prepare for trial. Because Unicure's failure to answer Nelson's Interrogatories respecting the amount of its damages has been so complete and because its purported justifications for such failure are specious at best, I conclude that such failure has been willful and in bad faith.

I am also persuaded by Nelson's argument that Unicure has not adequately responded to Interrogatories concerning its trade secrets. The most comprehensive trade secret information which has been provided by Unicure is contained in its further supplementary answers dated May 10th. However, even these most recent answers are extremely ambiguous and do not sufficiently explain the substance of Unicure's trade secrecy claims.[8]

For example, item 8 of Unicure's most recent answers states that:

"No one specific procedure can be given for all the spurious attempts at circumventing confidential general principles of methods of manufacturing, as that manufacturing relates to a formula with wide variations permitted."

Not only is the meaning of this statement uncertain, but Unicure has failed to describe what it refers to as "confidential general principles of methods of manufacturing."

Unicure further refers to an "[exactly] right ratio of each ingredient as it should relate to the manufacturing process" and states that the manufacturing process varies "in numerous aspects" depending upon various factors such as the size and shape of vessel being utilized and the substitution of particular raw materials. Item 8 then proceeds to recite one specific example of a manufacturing process in order to "clarify some of the theoretical considerations." However, Unicure does not state how the ratio of ingredients relates to the manufacturing process, nor does it precisely describe how the manufacturing process varies according the factors it has recited. Moreover, there is no discussion of the so-called "theoretical considerations" referred to by Unicure. A single example of how Unicure's conditioner *could* be made is insufficient to identify the precise nature of its claimed trade secret.

Additionally, Nelson has correctly argued that Unicure's answers to particular Inter-

---

8. My February 22nd Order required Unicure to provide further answers to Nelson's first set of Interrogatories, including those relating to its trade secrecy claims, by March 1st. Unicure did not provide such information regarding its trade secrecy claims within the prescribed time limit. It explains its tardiness on the grounds that a protective order was required to be obtained in order to file its supplementary answers under seal, that Unicure was reluctant to disclose the information and that its chemist was unable to devote sufficient time to answering the Interrogatories. Although Unicure is correct that a protective order was required to be obtained with respect to the supplementary answers, its unilateral decision that it would not provide timely answers because its chemist was too busy with other matters and because it was reluctant to provide confidential information to Nelson is wholly improper. Because I perceive no actual prejudice to Nelson as a result of Unicure's delay in providing this supplementary information, I do not place significant emphasis on this delay for purposes of the current motion. However, I will deal more strictly with any future unilateral decision by Unicure not to provide discovery in a timely manner.

rogatories are inconsistent with other answers. For example, Unicure's reference to an "exact ratio" of ingredients contradicts other of its answers which prescribe certain varying ranges of particular ingredients. In sum, Unicure's answers concerning the nature of its alleged trade secret are evasive, ambiguous and incomplete.

Thus, Nelson is entitled to relief with respect to Unicure's failure to provide full and complete answers to his Interrogatories. There is, however, some question concerning the effect of my February 22nd Order. Although my Order directed Unicure to provide answers to Interrogatories "based on" the matters raised by Nelson's attorney's December 11th letter, there was no significant elaboration of its particular obligations. Unicure must have realized that it would be expected to substantially correct the deficiencies raised by Nelson's attorney, but because the Order was somewhat ambiguous the severe sanction of dismissing its Amended Complaint should not be imposed.

Therefore, Nelson's motion to dismiss is hereby ORDERED denied. However, Unicure is hereby ORDERED to provide further answers to Nelson's Interrogatories (particularly relating to the amount of its damages and its alleged trade secrets) within thirty days after entry of this Memorandum and Order. In the event that Unicure fails to provide such answers or that its answers are deemed inadequate or deficient in any substantial degree, Nelson may renew his motion for sanctions pursuant to Fed.R.Civ.P. rule 37.

It is further ORDERED that Nelson shall be entitled to an award of his reasonable expenses, including attorney's fees, in connection with the current motion, provided that appropriate affidavit(s) concerning the amount of such expenses shall be submitted within twenty days after entry of this Memorandum and Order. Unicure shall submit any papers in response to such affidavit(s) within ten days after such affidavit(s) are served upon it.