Alvin E. PRESS, Plaintiff,

v.

James H. McNEAL, Jr., Mark A. Gordon, Denis T. Sullivan, Michael J. Galloway, Michael Flanigan, Paul E. Gangewer and the Budd Company, Defendants.

Civ. A. No. 82–3296.

United States District Court, E.D. Pennsylvania.

June 30, 1983.

---

Alvin E. Press, pro se.

Carol A. Mager, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

**MEMORANDUM AND ORDER**

DITTER, District Judge.

In this case, plaintiff sought declaratory relief as well as compensatory and punitive damages because his employer withheld federal income taxes from his wages. Having concluded no cause of action was stated, I dismissed the complaint. Presently before me is defendants' motion for counsel fees and costs.

In 1981, plaintiff filed a Form W–4, Employee's Withholding Allowance Certificate, in which he claimed that he was exempt from having any tax withheld by his employer, the Budd Company. Because of the claimed exemption, Budd Company submitted the W–4 to the Internal Revenue Service for review, as required by 26 C.F.R. § 31.3402(f)(2)–1(g) (1982). After reviewing this certificate, the IRS District Director instructed Budd to disregard it and withhold on the basis of two withholding allowances. The plaintiff then filed another W–4 form for 1982 in which he claimed thirteen exemptions. Pursuant to 26 C.F.R. § 31.3402(f)(1)–1(g)(5)(vi) (1982),[1] Budd disregarded this certificate and continued to withhold on the basis of two exemptions. Notwithstanding the corporate defendant's unambiguous duty to proceed as it did, plaintiff brought this action alleging that the defendants deprived him of rights guaranteed by the Constitutions of the United States and Pennsylvania, statutory law, and the common law. He charged the defendants had conspired with the United States Department of the Treasury in a surreptitious and ill-advised scheme to annul, supersede, negate, nullify, invalidate, and inviolate the intent of Congress. He asserted

1. 26 C.F.R. § 31.3402(f)(2)–1(g)(5)(vi) states:
   If and when the employee does file any new certificate (after an earlier certificate of the employee was considered to be defective), the employer shall withhold on the basis of that new certificate (whenever filed) as currently effective only if the new certificate does not make a claim of exempt status or of a number of withholding exemptions which claim is inconsistent with the advice earlier furnished by the Internal Revenue Service in its written notice to the employer. If any new certificate does make a claim which is inconsistent with the advice contained in the Service's written notice to the employer, then the employer shall disregard the new certificate, shall not submit that new certificate to the Service, and shall continue to withhold amounts from the employee on the basis of the maximum number specified in the written notice received from the Service.

that the defendants currently deny him lawful compensation by withholding "approximately 110 federal reserve notes per week from Plaintiff's wages" for federal income tax. In addition to Budd Company, suit was brought against its president and chief executive officer, its assistant comptroller, various department managers, and the individual who signed plaintiff's payroll checks. There was no allegation in the complaint as to any specific act by any of these individuals, or all of them, to suggest what part any or all played in Budd Company's withholding taxes from plaintiff's wages. Plaintiff sought a declaratory judgment that his legal and property rights had been violated, $16,500 in compensatory damages, and $225,000 in punitive damages.

Thereafter, plaintiff demanded that this matter be indexed as a lis pendens, citing as his authority Local Rule of Civil Procedure 32. The corporate defendant's real property in Philadelphia, consisting of 156 acres was described by metes and bounds. In an accompanying petition, plaintiff stated the lis pendens was sought to impress upon the defendants the magnitude of their transgressions and the hardship and irreparable injury that had been inflicted upon plaintiff as a consequence. Pursuant to plaintiff's demand, on September 22, 1982, the Clerk of Court entered a lis pendens in the judgment index under the names of Budd Company and James McNeal.

On November 23, 1982, after a hearing, I dismissed this action, supplementing my bench ruling with a written order issued November 24, 1982. I also directed the defendants' attorney to submit a brief and affidavit in support of her request for attorney's fees. Following an opposing brief and other filings, a hearing was held on February 28, 1983. I have concluded that given the utterly frivolous and harassing nature of this litigation, an award of attorney's fees is appropriate.

In *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 756, 100 S.Ct. 2455, 2459, 65 L.Ed.2d 488 (1980), the Supreme Court reaffirmed its recognition of an exception to the American rule that a litigant cannot recover its attorney's fees. The Court stated that this general rule "does not apply when the opposing party acted in . . . 'bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* at 765–66, 100 S.Ct. at 2464 quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 126, 129, 94 S.Ct. 2157, 2163, 2165, 40 L.Ed.2d 703 (1974). *See also Lichtenstein v. Lichtenstein,* 481 F.2d 682 (3d Cir.1973), *cert. denied,* 414 U.S. 1144, 94 S.Ct. 895, 39 L.Ed.2d 98 (1974). Despite the inherent power of a court to assess attorney's fees, I recognize that this authority should be exercised with restraint, *Roadway Express, Inc. v. Piper,* 447 U.S. at 764, 100 S.Ct. at 2463, and that the standards for bad faith are necessarily stringent. *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 180 (D.C.Cir.1980). In defining this term, the Second Circuit has stated, "An action is brought in bad faith when the claim is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay or for other improper reasons." *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir. 1977) (emphasis added). *See also Nemeroff v. Abelson,* 620 F.2d 339, 349 (2d Cir.1980). Despite the rigorous standard which must be applied, there is ample proof that this action was not only entirely without color, but was also asserted wantonly, vexatiously, and for the purpose of harassment.

As I concluded in my November orders, this action was wholly without color for the following reasons:

(1) Although plaintiff's suit was based upon a withholding certificate and its claim of tax exempt status, there was no allegation in the complaint that the certificate was valid and at the hearing there was no reason advanced by the plaintiff to suggest that he was exempt from the payment of taxes or having taxes withheld. Quite the contrary appeared because plaintiff testified he earned more than $13.70 an hour and worked 40 hours a week, which means his gross earnings are about $28,000 a year.

(2) There is no basis for recovery from the defendant or its officers for the alleged wrong done to the plaintiff. Indeed, the corporate defendant was acting in accordance with the duties imposed upon it by federal law. Because plaintiff's 1982 W-4 form was inconsistent with the advice provided to Budd by the IRS, Budd properly disregarded plaintiff's certificate and continued to withhold on the basis of two exemptions. *See* 26 C.F.R. § 31.3402(f)(2)–1(g)(5)(vi) (1982).

(3) Plaintiff sought a declaratory judgment citing as a basis of jurisdiction 28 U.S.C. § 2201. This section of the Code, however, specifically states it is not applicable to suits with respect to federal taxes. This section means what it says. *See, e.g., Shaffer v. Commissioner,* 515 F.Supp. 748 (E.D.La.1981); *Lynch v. Polaroid Corp., et al,* 80–1 USTC ¶ 9191 (D.Mass.), *aff'd,* 627 F.2d 1088 (1st Cir. 1980).

(4) Plaintiff sought an injunction to preclude the withholding of taxes from his wages. However, 26 U.S.C. § 7421 specifically states that no suit for the purpose of restraining the collection of taxes shall be maintained. This means exactly what it says. *See, e.g., Stonecipher v. Bray,* 653 F.2d 398 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1981); *Stefanelli v. Silvestri,* 524 F.Supp. 1317 (D.Nev.1981), *aff'd,* 698 F.2d 1232 (9th Cir.1982).

Aside from its meritless legal basis, the vexatious nature of this action is manifest in several ways.

First, this is the third time Press has brought suit to preclude the withholding of taxes from his wages. In *Press v. Sullivan, et al,* C.A. No. 81–2781, Judge Becker rejected Press' contention that Budd acted improperly in failing to honor his 1981 W-4 form which claimed he was exempt from withholding taxes. This claim was dismissed for want of subject matter jurisdiction. Similarly, in *Press v. Rideoutte,* C.A. No. 81–3552, Press sought to enjoin the IRS from instructing Budd to disregard his 1981 W-4 form because of his excessive number of claimed exemptions. Press attempted to join Budd as an additional defendant but was denied leave to do so. This action was consolidated with the one assigned to Judge Becker and dismissed. *See also Press v. The Budd Company,* C.A. No. 81–1001.

In addition to this duplicativeness, evidence of plaintiff's bad faith is apparent in his attempt to impose individual liability upon various corporate officials even though he failed to plead with even a modicum of specificity any basis for it. Third, even if by the wildest flight of imagination there was some basis for liability on the part of Budd, its officers, and employees, plaintiff's claim for $241,500 in punitive and compensatory damages is clearly excessive. Fourth, Press' demand in his prayer for relief that the defendants' conduct "good citizenship" classes in which the meaning of the 16th Amendment would be explained is patently absurd.

Fifth, plaintiff's filing of a notice of lis pendens demonstrates the complete absence of his good faith and the wanton, harassing nature of this suit. Plaintiff cited Local Rule No. 32, which specifically states that lis pendens orders may be filed to give notice of a suit "involving title to real property." The title to Budd Company's real property is not involved in this case, nor is that of any of its corporate officers or employees, and Press did not contend otherwise. To the contrary, he gave as one of the reasons for the lis pendens his intention "to impress upon Defendants the magnitude of their transgressions; [and] the hardship and irreparable injury inflicted upon your Petitioner as a consequence thereof." The fact that he provides a metes and bounds description of Budd's 156 acres of land shows he knew the extent of Budd's property he was trying to tie up and that he must have had some idea of its very considerable value. Although he did not provide metes and bounds descriptions of the properties of the individual defendants, his order of lis pendens to the Clerk of this Court stated it was to be indexed against the "Defendants (in toto)." Press sub-

mitted an order for me to sign which was directed to the Prothonotary of Philadelphia requiring him to index this action as a lis pendens against the "Defendants."

■ The existence of a lis pendens could have had a serious, detrimental effect on Budd. It could have interfered with the sale or mortgage of Budd's property, which is exactly what Press intended. In his words, he sought the lis pendens "to protect Plaintiff's property rights and financial interest—in the likely event The Budd Company should declare bankruptcy (Chap. 11) or sell its real property and manufacturing process to a foreign competitor." Whatever basis plaintiff's fears have in reality is irrelevant because lis pendens has no application except in cases involving the adjudication of rights in specific property. *Shannon v. Barrett,* 65 Pa.D & C 2d 446, 448–49 (Del. Co.1974); *Rose Valley Borough v. Rose Valley Acres,* 31 Pa.D & C 261 (Del.Co.1937). Its purpose is to give notice to third parties that any interest they may acquire in the property is subject to the outcome of litigation. *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 450 A.2d 36 (1982). Lis pendens cannot be used to attempt to gain a priority in bankruptcy nor to aid in the satisfaction of a possible money judgment.

■ However abusive Press intended to be against Budd is but a minor wrong when compared to his intended abuse as to the corporate officials and employees named as defendants in this case. These individuals were not all corporate officers—not that that would make any difference—but they included the managers of Budd's employee relations and two of Budd's payroll departments. One of the individual defendants was the man who signs Press' payroll check. Having failed to state with even a pretense of specificity what any or all of the individual defendants may have done, plaintiff then attempted to use lis pendens as a method to tie up the real property of each. Obviously, a lis pendens may interfere not only with the ability to sell or mortgage

property but its use as collateral for any kind of loan. A lis pendens may be highly detrimental to a person's credit standing, not only now but in the future. A man's credit may be ruined by far more minor matters than the indexing of a lis pendens against him. Each of these individuals faces the prospect of credit refusals, all sorts of inquiries, and the necessity of many explanations because plaintiff wanted to impress upon them the magnitude of their transgressions.

When plaintiff's conduct is viewed in its totality, it is difficult to classify it as anything but abusive.

Turning to the issue of the calculation of attorney's fees, defendants' attorney, Carol Mager, Esquire, has submitted an affidavit detailing the hours she and an associate spent in connection with this litigation. According to the affidavit, Ms. Mager worked a total of 23 hours on this case with her associate spending an additional 25.3 hours. Their hourly rates are $90–100 per hour and $50 per hour, respectively. Although plaintiff vigorously protested the appropriateness of awarding attorney's fees, at no point during these protracted proceedings did he challenge the reasonableness of defendants' attorneys' calculations. Moreover, based upon my own review of the record, I find that both the hours expended by defendants' counsel and their hourly rates are reasonable. Therefore, an award of $3,443.00 in attorneys' fees is appropriate.[2]

Defendants have also allegedly incurred $107.14 in expenses in connection with this case. However, because no detail or explanation is provided as to what these expenses represent, defendants' request for reimbursement as to these costs is refused.

**2.** *See Schultz v. Stark,* 554 F.Supp. 1219 (E.D. Wis.1983) where the court imposed counsel fees in a similarly spurious action by a corporate defendant's employees claiming to be exempt from withholding taxes.