Roland J. ADAMSONS, Appellant,

v.

Clifford R. WHARTON, Jr., as Chancellor of the State University of New York; Donald J. Scherl, as President of Downstate Medical Center College of Medicine; and Bernard M. Jaffe, as Chairman of the Department of Surgery at Downstate Medical Center, Appellees.

No. 1326, Docket 85–7249.

United States Court of Appeals,
Second Circuit.

Argued June 13, 1985.

Decided Aug. 21, 1985.

Morris Weissberg, New York City, for appellant.

Frederic L. Lieberman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of State of N.Y., Colvin W. Grannum, Asst. Atty. Gen., New York City, of counsel), for appellees.

Before FRIENDLY, OAKES and WINTER, Circuit Judges.

PER CURIAM:

Dr. Roland J. Adamsons appeals from an order of the United States District Court for the Eastern District of New York, Charles P. Sifton, Judge, denying his motion for a preliminary injunction to force the Downstate Medical Center College of Medicine of the State University of New York ("Downstate") to allow Dr. Adamsons to earn as much money as he can in private practice while teaching full-time at Downstate. Dr. Adamsons' section 1983 claim posits that Downstate's rules limiting the private practice earnings of professors violate various constitutional provisions. We affirm the district court's denial of the preliminary injunction and find the appeal to be frivolous, warranting the imposition of double costs and attorneys' fees on appellant.

Dr. Adamsons, a licensed physician and surgeon, was a full-time professor at Downstate for over a decade. His professional obligations included lecturing, publishing, and teaching in various clinical contexts. Dr. Adamsons also has a thriving private practice. Downstate, like many other teaching hospitals, considers a faculty member's private practice to play an integral role in teaching. To that end, students and residents learn by observing and aiding faculty members in the treatment of the faculty members' patients. Professors thus are given admitting privileges at Downstate. Most of Dr. Adamsons' private practice takes place, however, not at Downstate but at other institutions where he also has admitting privileges.

Downstate regulates the relationship between the private practice and teaching responsibilities of faculty members by means of provisions in a collective bargaining agreement with the professors' union. Under the terms of the collective bargaining agreement, Downstate has adopted a clinical practice plan that limits the extent of professors' income from private practice. The plan, however, does allow exemptions for professors who have limited connections with Downstate. Dr. Adamsons applied for and was denied such an exemption. Still, Dr. Adamsons declined to participate in the plan. As a result, his employment was suspended pending a grievance proceeding before an arbitrator, and his admitting privileges at Downstate were automatically suspended.

Dr. Adamsons then filed this section 1983 action against the administrators of Downstate in federal district court, alleging that the suspensions violate his First Amendment rights to association, that the system for granting exceptions violates equal protection, and that Downstate's plan violates due process of law by taking 58% of his 1984 income from teaching and practicing medicine.[1] Subsequently, Dr. Adamsons sought a preliminary injunction restraining defendants from continuing his suspension from the Downstate faculty and the suspension of his Downstate privileges. On March 12, 1985, the district court denied the motion. This appeal followed.

As this court recently stated, "The standards for granting preliminary injunctive relief are well established in this Circuit." *Joseph Scott Co. v. Scott Swimming Pools, Inc.,* 764 F.2d 62, 66 (2d Cir. 1985). On numerous occasions we have reiterated that the movant must show (A) irreparable harm and (B) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the movant. *See, e.g., Sperry International*

---

1. The complaint also charges that Downstate should be responsible for income taxes on his excess private-practice income as a consequence of adopting the plan. Whatever the merits of this claim, it apparently has nothing to do with his motion for preliminary injunction and thus is irrelevant for the purposes of this appeal.

*Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). The district court correctly found that Dr. Adamsons failed to satisfy any of these requirements.

■■■ Appellant's constitutional claims are farfetched at best. Other courts have upheld the constitutionality of medical practice plans like Downstate's. *See, e.g., Gross v. University of Tennessee,* 620 F.2d 109, 110 (6th Cir.1980); *Kountz v. State University of New York,* 109 Misc.2d 319, 437 N.Y.S.2d 868 (Sup.Ct.1981), *aff'd,* 87 A.D.2d 605, 450 N.Y.S.2d 416 (1982). As these decisions make clear, medical school faculty members have no constitutional right to unlimited private practice revenues. Appellant's taking/due process claim falls in the face of Downstate's legitimate interest in promoting devotion to teaching and the rational relationship between that interest and the practice plan in question.[2] Likewise his equal protection claim lacks merit in light of the district court's finding that the plan's exception has never been extended to a full-time faculty member. Finally, Dr. Adamsons' attempt to rely on his associational rights under the First Amendment is ill conceived. Those rights do not protect a faculty member's quest for outside income. *Cf. Roberts v. United States Jaycees,* —— U.S. ——, ——, 104 S.Ct. 3244, 3248, 82 L.Ed.2d 462 (1984) (describing the rights of association outlined in Supreme Court case law). In short, we find no likelihood of success on these constitutional claims, and we uphold the conclusion of the district court that any questions on the merits are not substantial enough to warrant a preliminary injunction.[3]

■■■ Nor did appellant show irreparable injury. As the district court noted, improper termination of employment and damage to reputation can be compensated with money damages. Dr. Adamsons made no showing that his patients or his practice itself would suffer. In fact, before this court appellant ignores the district court's finding with respect to irreparable injury.

■■■ Finding that Dr. Adamsons' appeal lacks merit, we turn to appellees' claim that the appeal is frivolous and that they deserve an award of double costs and attorneys' fees. We agree. Such an award is clearly authorized where the appeal is found to be frivolous. *See* 28 U.S.C. §§ 1912, 1927 (1982); Fed.R.App.P. 38; *In re Hartford Textile Corp.,* 659 F.2d 299, 303 (2d Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); *Bankers Trust Co. v. Publicker Industries, Inc.,* 641 F.2d 1361, 1367–68 (2d Cir. 1981); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (inherent power).[4] And we have little trouble finding this appeal frivolous. As noted above, Dr. Adamsons' constitutional claims are altogether unlikely to prove fruitful. More important, on the appeal from a denial of a motion for a preliminary injunction, this court has always been sensitive to whether the movant has made a showing of irreparable injury. *See, e.g., Jackson Dairy,* 596 F.2d at 72–73. Three factors taken together justify sanctions in this case. Appellant lacks a basis for arguing irreparable injury.

---

2. Appellant suggests as well that the grievance procedure provided for in the collective bargaining agreement violates due process, but fails to put forth any coherent argument to support the suggestion.

3. In addition, appellees argue that appellant's claims are barred by res judicata, citing *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Appellant was a plaintiff in *Kountz,* a state court proceeding in which the court addressed issues similar to those raised in the complaint below.

Nevertheless, the district court did not rely on the argument, and in light of our decision we need not address the issue.

4. Any requirement of notice and hearing prior to the imposition of these sanctions or the finding of frivolousness, *see* Martineau, *Frivolous Appeals: The Uncertain Federal Response,* 1984 Duke L.J. 845, 873–77, appears met here where appellees' brief Point II argued therefor and appellant's reply brief did not deign to discuss the point.

**44**

He fails even to challenge the district court's finding that money damages can remedy any deprivation he may have suffered. Instead, contradicting our repeated holdings, he argues that he need not show irreparable injury in a case, such as this one, that involves "fundamental constitutional rights."

Affirmed, with double costs and $3,000 in attorneys' fees against appellant and appellant's attorney.