Frank MARTINELLI, Plaintiff,

v.

BRIDGEPORT ROMAN CATHOLIC
DIOCESAN CORP., et al.,
Defendants.[1]

No. 93CV1482 (JBA)(TPS).

United States District Court,
D. Connecticut.

March 31, 1998.

William M. Laviano, Donna L. Ruhling–Laviano, Jennifer D. Laviano, Laviano Law Offices, Ridgefield, CT, for Frank Martinelli.

Joseph T. Sweeney, James V. Somers, Halloran & Sage, Robert C. Danaher, Sr., Matthew G. Conway, Danaher, Tedford, Lagnese & Neal, Hartford, CT, for Bridgeport Roman Catholic Diocesan Corp.

Joseph Dimyan, Pinney, Payne, Van Lenten, Burrell, Wolfe & Dillman, Lee Farm Corp. Pk., Danbury, CT, for James E. Sullivan.

1. The Complaint names as defendants Father Brett and the Bridgeport Roman Catholic Diocesan Corporation. However, the docket does not indicate that either an appearance or an answer to the Complaint have ever been filed on Father Brett's behalf.

### RULING ON PENDING MOTIONS

SMITH, United States Magistrate Judge.

The plaintiff, Frank Martinelli, brings this diversity action alleging the intentional and negligent infliction of emotional distress and related torts stemming from his sexual abuse by the defendant Father Laurence Brett. This civil action was tried before a jury beginning August 11, 1997. On August 26, 1997, the jury returned a verdict in favor of the plaintiff in the amount of $750,000.00. Now pending before the court are the plaintiff's motions for sanctions pursuant to Fed. R.Civ.P. 37 (docs. ## 98, 158) and Fed. R.Civ.P. 11 (doc. # 188–1), for relief from a portion of the court's March 24, 1997, summary judgment ruling (doc. # 138), to reopen the judgment regarding negligence (doc. # 188–2), and for discovery regarding the alleged Rule 11 violations (doc. # 191).[2] For the reasons that follow, the plaintiff is entitled to monetary sanctions in the amount of $33,195.75.

### Background

The facts relevant to resolution of the instant motions are as follows:

1. The plaintiff filed this lawsuit on July 27, 1993, to recover damages allegedly sustained as a result of three sexual encounters between him and the defendant Father Laurence Brett. The Complaint indicates that these sexual encounters occurred between 1961 and 1963, when the plaintiff was between thirteen and fifteen years of age and Father Brett was employed as a priest by the defendant Bridgeport Roman Catholic Diocesan Corporation (the "Diocese").

2. The plaintiff served discovery requests upon the defendant on November 22, 1993. Document Request No. 1 requested: "All documents in the personnel file of Father Laurence Brett, including the file 'jacket' or other object used to contain the file, and all the attachments thereto." Document Request No. 5 requested: "All documents not previously requested mentioning, regarding or referring to Father Laurence Brett."

3. The Diocese objected to these and other discovery requests on the grounds that they were overly broad and not reasonably defined in their scope. The plaintiff then filed a motion to compel the objected-to discovery on July 29, 1994.

4. On December 22, 1994, the undersigned granted the plaintiff's motion to compel, limiting the production "to documents in the Bridgeport Diocese's possession."

5. On April 5, 1996, the defendant produced the requested discovery responses and corresponding documents, including the personnel file of Father Brett.

6. On March 24, 1997, Judge Arterton issued an opinion granting the defendant's motion for summary judgment with respect to the plaintiff's negligent training and supervision claim in Count 7 of the Complaint, as well as Counts 1, 4, and 5 insofar as they were premised on the defendant's failure to prevent the plaintiff's sexual abuse.

7. The plaintiff filed his first motion for sanctions on July 17, 1997.

8. On or about July 20, 1997, the plaintiff's attorney, William Laviano,[3] spoke with Harold Berliner, Jr. and Michael Pinter and learned of the settlement of sexual abuse claims made by these men in the spring of 1993 against Father Brett and the Diocese.[4] The alleged sexual abuse occurred in California in 1965. Mr. Berliner's claim against the Diocese was settled in January of 1994; Mr. Pinter's claim was settled in May of 1994.

---

2. The parties have also filed motions for judgment as a matter of law (docs.# 167, 187, 192, 197), for a new trial on the vicarious liability count (doc. # 189), for a hearing on punitive damages (doc. # 190–1), for post-trial discovery on damages issues (doc. # 190–2), and to strike the defendant's reply (doc. # 254). District Judge Janet Bond Arterton will address these motions under separate cover.

3. The court is aware that appearances were filed on behalf of the plaintiff by William Laviano, Donna L. Ruhling–Laviano and Jennifer D. Laviano. For the purposes of simplicity, however, the court hereinafter refers to the plaintiff's counsel as Mr. Laviano.

4. Mr. Berliner and Mr. Pinter's claims arising from Father Brett's sexual abuse were also directed against the Diocese of Sacramento. Those claims are being resolved separately, the details of which are not relevant to the instant motions.

On July 21, 1997, Mr. Laviano inquired of the defendant's counsel[5] as to the existence of settlement and confidentiality agreements regarding these claims, and if they existed, requested copies of said agreements. After inquiring of the defendant and receiving said documents, defense counsel turned over both settlement and confidentiality agreements to Mr. Laviano by July 23, 1997.[6]

9. The trial of this case commenced with the presentation of evidence on August 11, 1997. During the trial, there arose a dispute over discovery concerning the defendant's delayed production of the Berliner and Pinter settlement/confidentiality agreements, as well as a letter dated August 12, 1993, which was in the defendant's possession, but was not provided during discovery (Mr. Laviano obtained the letter from Mr. Berliner). The August 12, 1993, letter from Alan Konrad, an attorney representing the Servants of the Peraclete, the New Mexico facility where Father Brett resided from December, 1964, through March, 1965, was addressed to Bruce Edwards, an attorney for the Diocese of Sacramento, and discussed Mr. Berliner's sexual abuse claim against Father Brett. Mr. Laviano claimed that this delayed discovery also led to the late discovery of the notes of Father Charles S. McDermott, part of which document a conversation between Father McDermott and Monsignor Andrew T. Cusack, held in February of 1993, in which Msgr. Cusack allegedly told Father McDermott that he was informed in 1962 of two allegations of sexual abuse against Father Brett. To alleviate the prejudice to the plaintiff resulting from this delayed discovery, Judge Arterton released Mr. Berliner and Mr. Pinter from their confidentiality obligations so that they could communicate directly with Mr. Laviano, and suspended trial for a period to allow Mr. Laviano to take additional depositions in New Jersey and California.

10. At the conclusion of trial, the jury returned a verdict for the plaintiff on August 26, 1997, in the amount of $750,000.00.

11. In the weeks following the trial, the plaintiff filed two additional motions for sanctions, as well as a host of motions requesting relief in some form from various judgments entered in the case. The defendant also filed two motions for judgment as a matter of law.

12. The undersigned held a hearing on the plaintiff's motions for sanctions on October 27, 1997. At the court's request, the parties filed simultaneous briefs following the hearing on November 7, 1997.

### *Discussion*

*A. Plaintiff's Motions for Sanctions Pursuant to Rule 37*

The plaintiff's motions for sanctions are based upon three sets of documents: (1) the Berliner and Pinter settlement/confidentiality agreements, which the defendant did not provide until July 22 and 23, 1997; (2) the August 12, 1993, Servants of the Peraclete letter, which the plaintiff obtained from Mr. Berliner; and (3) Father McDermott's notes, particularly those documenting his conversation with Msgr. Cusack in February of 1993, which the plaintiff also obtained from Mr. Berliner. The plaintiff claims he was severely prejudiced in his pursuit of this action as a result of the defendant's discovery violations, and requests the following sanctions pursuant to Rule 37:(1) the award of attorney's fees and costs; (2) "an order directing a verdict on all counts for the plaintiff in the amount the jury found on the fiduciary duty claim"; and (3) an order setting aside summary judgment on the negligence and failure to warn counts, due to newly discovered evidence (Father McDermott's notes). (Pl.'s 11/6/97 Supp. Mem. at 7–8.) The defendant objects to the imposition of sanctions on the grounds that the discovery violations were

---

5. At this time, defense counsel included Robert C. Danaher, Sr. and Matthew G. Conway. Joseph T. Sweeney filed an appearance on the defendant's behalf on July 29, 1997.

6. The defendant points out that there were several documents in Father Brett's personnel file, provided to the plaintiff in April of 1996, which

refer to Mr. Berliner and Mr. Pinter's claims. Moreover, upon Mr. Laviano's request in spring of 1996, defense counsel provided a list of names and addresses of the individuals listed in the personnel file, which list included Mr. Berliner and Mr. Pinter.

not willful and the plaintiff was not prejudiced in any way.

■ Generally, district courts possess broad power to sanction parties for abusive litigation practices that disrupt the administration of justice. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). In *National Hockey League*, the Supreme Court observed that Rule 37 sanctions must be available "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781.

■ Rule 37 provides a non-exclusive list of sanctions that may be imposed on a party for failing to obey an order to provide or permit discovery. *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1027 (2d Cir.1991).[7] The mildest sanction is the reimbursement of expenses to the opposing party caused by the offending party's failure to cooperate, while the harshest sanction is the order of dismissal and default judgment. *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979). While a showing of willful disobedience or gross negligence is required to impose a harsher sanction, a finding of willfulness or contumacious conduct is not necessary to support sanctions which are less severe than dismissal or entry of a default judgment. 7 James Wm. Moore et al., *Moore's Federal Practice* ¶ 37.50[2][b] (3d ed.1997); *see Argo Marine Sys., Inc. v. Camar Corp.*, 755 F.2d 1006, 1015 (2d Cir.1985) (sanctions may be imposed even if failure to comply was not willful, but instead the result of gross or even simple negligence); *Cine Forty–Second St. Theatre*, 602 F.2d at 1067–68 (negligent wrongs are fit subjects for general deterrence, though courts should "eschew the harshest of sanctions provided by Rule 37 where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence")[8]; *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 349–50 (D.Conn.1981) (a finding of willful disobedience or gross negligence required only if harsher sanction is applied).

■ The defendant does not contest that it failed to produce the Berliner and Pinter settlement/confidentiality agreements and the Servants of the Peraclete letter in accordance with the court's discovery order.[9] However, the Diocese argues that its failure to turn over the documents was inadvertent, due to the fact that they were kept in a separate, confidential file by the Diocese. Furthermore, the defendant argues that no prejudice befell the plaintiff as a result of their non-compliance, due to the rulings made by Judge Arterton during trial and the

---

7. Rule 37 reads in relevant part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> ... (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action, or rendering a judgment by default against the disobedient party; ...
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
>
> Fed.R.Civ.P. 37(b)(2).

8. The Second Circuit noted in *Cine Forty–Second St. Theatre* that

> Rule 37 was amended in 1970 to permit the imposition of a broader range of sanctions. By deleting the word "willfully" from subsection (d) of the Rule, the drafters intended "that wilfulness [be] relevant only to the selection of sanctions, if any, to be imposed."

*Cine Forty–Second St. Theatre*, 602 F.2d at 1066 n. 8 (quoting Advisory Committee Note, reprinted in 4A James Wm. Moore et al., *Moore's Federal Practice* ¶ 37.01(8) (2d ed.1975); *Flaks v. Koegel*, 504 F.2d 702, 708 (2d Cir.1974)).

9. The defendant does, however, contend that it was never in possession of Father McDermott's notes, and as such, had no duty to turn them over during discovery. Since the court's discovery order was limited to "documents in the Bridgeport Diocese's possession," the court agrees with the defendant on this point.

fact that the plaintiff received other information with Father Brett's personnel file in April of 1996 that would have revealed the same information. While it is not necessary to scrutinize the defendant's professed inadvertence since mere negligence supports the imposition of sanctions,[10] the court cannot agree that the plaintiff was not prejudiced by the defendant's actions.

Despite providing documents in Father Brett's personnel file which may have referenced Mr. Berliner and Mr. Pinter's claims, as well as furnishing their addresses (along with others) when requested, the defendant's failure to produce the actual settlement and confidentiality agreements during discovery clearly hindered the plaintiff's pursuit of this case. Several documents making indirect references to the Berliner and Pinter claims do not make the same impact during discovery as does the existence of two settlement and confidentiality agreements specifically resolving these claims. The Servants of the Peraclete letter, thoroughly discussing the background of Mr. Berliner's claim, is equally noteworthy. The last minute discovery undertaken by Mr. Laviano during trial was more hasty, as well as more expensive than that which would have been necessary had the documents been produced during the pre-trial discovery period. It is therefore appropriate for the defendant to shoulder the plaintiff's expenses incurred as a result of its discovery violations.

The plaintiff requests reimbursement of the fees and costs "expended by [his attorneys] as well as out of pocket expenses, flowing solely from the default of defendant in its discovery obligations and the necessity of conducting belated discovery during trial." (10/26/97 Laviano Aff. ¶ 2.) Mr. Laviano represents that this amount is $33,967.75 as of October 26, 1997. (10/26/97 Laviano Aff. ¶ 3.) The plaintiff also requests reimbursement for an additional 17.8 hours to cover the costs of the October 27, 1997, sanctions hearing and supplemental briefs. (11/6/97 Laviano Aff. ¶ 9.)[11]

The defendant protests that the plaintiff's request for attorney's fees and costs is "without foundation and is not entitled to consideration." (Def.'s 11/7/97 Supp. Mem. at 33.) The Diocese argues primarily that the discovery Mr. Laviano conducted during trial would have occurred regardless of when the Berliner and Pinter claims came to light, and furthermore, that the evidence Mr. Laviano obtained during that discovery was not relevant to the case. Thus, the defendant argues, it should not be required to reimburse the plaintiff for these expenses.

The defendant misses the point. The timing of discovery is as important as its content. *See, e.g., Stonybrook Tenants Ass'n, Inc. v. Alpert,* 29 F.R.D. 165, 167–68 (D.Conn.1961) (pre-trial discovery important to eliminating surprise and limiting subject of controversy at trial). The plaintiff in this case had a right to the information in question when he requested it. He was denied that right and disadvantaged by the denial. As a result of the delayed discovery of certain evidence, Mr. Laviano was forced to take rush depositions in New Jersey and California during the trial, and the plaintiff was forced to undergo a significant burden in advancing his case at a time when it was most inconvenient.[12] Though Judge Arter-

---

10. The court notes, however, that the defendant's non-compliance, though allegedly inadvertent, is not "substantially justified [so as to] make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2). That the Diocese kept the settlement/confidentiality agreements and the Servants of the Peraclete letter in a separate, confidential file which had been closed is no excuse for their failing to produce these documents when ordered by this court to produce all documents mentioning, regarding or referring to Father Brett which were "in the Bridgeport Diocese's possession."

11. Although Mr. Laviano represents that his hourly rate is $275.00, and that of Jennifer Lavi-

ano is $150.00, he fails to indicate how much of the additional 17.8 hours was billed by each attorney.

12. Anyone with experience representing plaintiffs at trial knows the extreme imposition that results when the discovery of crucial evidence is delayed until mid-trial. The plaintiff bears the burden of proving its case and must come forward with the requisite proof. This alone makes the plaintiff's camp an uncomfortably pressurized and frenetic one even under the best of circumstances. The withholding of important evidence not only prejudices counsel by forcing the plaintiff's lawyer to make a disruptive, last-minute reallocation of precious trial preparation

ton promptly took steps to remedy the prejudice as best as possible under the circumstances, the defendant cannot now point to the documents' eventual, tardy discovery as somehow comporting with the letter or spirit of the Federal Rules of Civil Procedure, or as a reason for relieving it from the financial consequences of its failure to comply with this court's order.

With regard to the Diocese's argument concerning the ultimate relevance of the information Mr. Laviano sought out, the court is satisfied that the evidence was properly discoverable, and reminds the defendant that a valid discovery request need only "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). The defendant must, therefore, bear the costs associated with the plaintiff's delayed discovery.

Mr. Laviano represents that his hourly rate is $275.00, and that of his co-counsel, Jennifer Laviano, is $150.00. Despite the fact that the defendant does not object to Mr. Laviano's requested rates in its post-hearing brief, the court, in the exercise of its supervisory responsibility, finds that a rate of $225.00 is reasonable for an attorney of Mr. Laviano's skill and expertise in this area. Ms. Laviano's $150.00 hourly rate is also reasonable. Therefore, the plaintiff is enti-

tled to sanctions in the amount of $33,-195.75.[13]

While the defendant's discovery violations warrant the award of attorney's fees and costs, it is inappropriate at this juncture to impose the additional two sanctions sought by the plaintiff: an order directing a verdict on all counts for the plaintiff in the amount the jury found on the fiduciary duty claim, and an order setting aside summary judgment on the negligence and failure to warn counts due to newly discovered evidence. Timely discovery of the settlement/confidentiality agreements and the Servants of the Peraclete letter, in addition to any additional evidence it may have generated (such as Father McDermott's notes), arguably could have affected Judge Arterton's summary judgment ruling as well as the jury's ultimate verdict. However, these are issues more appropriately brought before the trial judge. As such, the undersigned declines to impose these additional sanctions.

*B. Plaintiff's Motions for Sanctions Pursuant to Rule 11 and for Discovery Regarding the Alleged Rule 11 Violation*

The plaintiff also seeks to sanction the defendant pursuant to Rule 11 for "presenting in its pleadings and pre-trial orders the claim that priests are 'self-employed, independent contractors,' or 'licensees' for the purposes of this action." (Pl.'s 9/11/97 Post Trial Mem. at 31.)[14] Additionally, the plain-

---

time to tasks that should have been completed prior to trial, but also disrupts the proceedings by forcing a remedial mid-trial recess to permit the aggrieved practitioner a fair opportunity to prepare.

13. This sum represents 86.9 hours billed by Mr. Laviano at $225.00 per hour, plus 41.9 hours billed by Ms. Laviano at $150.00 per hour, in addition to $3,785.25 in costs. (*See* 10/26/97 Laviano Aff. Ex. A.) In addition, the plaintiff is entitled to reimbursement for the additional 17.8 hours billed by his attorneys during and subsequent to the October 26, 1997, hearing. (*See* 11/6/97 Laviano Aff. ¶ 9.) As the plaintiff did not provide time sheets for this additional labor, the court assumes the same division of labor between Mr. and Ms. Laviano. Thus, the plaintiff is also entitled to reimbursement for 12.02 hours billed at $225.00 per hour, and 5.79 hours billed at $150.00 per hour.

14. Rule 11 states in relevant part:
  (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
    . . .
  (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the ... parties that have violated subdivision (b) or are responsible for the violation. Fed.R.Civ.P. 11.

tiff seeks to conduct additional discovery on this issue of Rule 11 sanctions. It is not apparent to the court, however, that Rule 11 sanctions are appropriate in this instance. The plaintiff has failed to shoulder his burden of proof on this point, as the issue was not sufficiently developed on the record at the October 26, 1997, sanctions hearing before the undersigned. As a result, the plaintiff's motions concerning Rule 11 sanctions are denied.

*C. Plaintiff's Motions for Relief from Summary Judgment Ruling and to Reopen the Judgment Regarding Negligence*

The plaintiff has also filed motions requesting (1) that the court set aside that portion of the court's March 24, 1997, summary judgment ruling which granted partial summary judgment with respect to Count 7 (negligent training and supervision) and Counts 1, 4, and 5 insofar as they were premised on the defendant's failure to prevent the plaintiff's sexual abuse and (2) that the court "reopen judgment regarding negligence and negligent retention pursuant to the court's Scheduling Order of August 27, 1997." (*See* Pl's 9/11/97 Renewed Mot. Pursuant to Rules 60, 37, and 11 at 1.) As previously discussed, it is inappropriate for the undersigned to determine what effect, if any, the defendant's discovery violations would have had on the court's prior rulings or the jury's verdict. These motions are more appropriately brought before the trial judge, and are denied without prejudice to renewal before Judge Arterton.

### Conclusion

For the aforementioned reasons, the plaintiff's motions for sanctions pursuant to Fed. R.Civ.P. 37 (docs. ## 98, 158) are GRANTED in part. The plaintiff is awarded monetary sanctions in the amount of $33,195.75. The plaintiff's motions for sanctions pursuant to Fed.R.Civ.P. 11 (doc. # 188–1) and for discovery regarding the alleged Rule 11 violations (doc. # 191) are DENIED. The remainder of the plaintiff's pending motions (docs. ## 138, 188–2) are DENIED without

prejudice to renewal before District Judge Arterton.

So ordered.