STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| Appeals of Valsangiacomo, <u>et al.</u> | } | Docket Nos. 130-8-03 Vtec and 64-4-04 Vtec |
|  | } |  |
|  | } |  |

<u>Decision and Order on Post-Judgment Motions</u>

In Docket No. 130-8-03 Vtec, Appellants Oreste and Helen Valsangiacomo, Donald and Valencia Giroux, Karen Lane, Joelen Mulvaney, Richard and Joan Parnigoni, Yvette Roy, Madeleine Simonetta, Edward Stanak, Mary Welch and Richard Wobby, Sr., appealed from the July 21, 2003 decision of the Development Review Board (DRB) of the City of Barre, approving an application to demolish a former convent building at 79 Summer Street. That appeal was effectively superseded by or merged into Docket No. 64-4-04 Vtec, in which the same appellants except for Richard Wobby, Sr., appealed from the March 9, 2004 decision of the DRB to approve the demolition of the convent in connection with its approval of a site plan for construction of an addition to the school and a two-car garage to serve the rectory, with associated redesign of the on-site vehicular and pedestrian circulation and parking, access to the street, paving, and landscaping, including relocation of an existing statue and memorial garden. Appellants are represented by Stephanie J. Kaplan, Esq.; Appellee-Applicants Roman Catholic Diocese of Burlington and its Parish of St. Monica are represented by William M. O'Brien, Esq.; the City of Barre is represented by Oliver L. Twombly, Esq.

In the decision on the merits of the appeals, this Court denied the site plan proposal for failing to provide adequate vehicular access, circulation and parking, and for failing adequately to separate vehicles and pedestrians. In that decision, the Court determined

1

that

> improvements to the on-site circulation and parking on the St. Monica campus associated with the dropping off and picking up of the school children would provide a significant benefit to the city if the improvements were to reduce the potential for vehicle-to-vehicle conflict and vehicle-pedestrian conflict on the nearby streets and sidewalks during the drop-off and pick-up periods for the school. That is, it would benefit the municipality, as well as the users of the St. Monica campus, to move this currently chaotic and unsafe student drop-off and pick-up function onto the St. Monica campus. There is no question that the current situation is chaotic and dangerous, and that a well-designed one-way loop system would be an improvement in safety, especially for the children.

However, the Court determined that the proposed site plan would not adequately perform that function. The site plan application was therefore denied without prejudice to Appellant-Applicants' redesign of and application for a future parking and on-site circulation proposal to provide safe play areas for the children; adequate and orderly on-site parking; and a circulation scheme that would facilitate the drop-off and pick-up functions discussed in this decision, as well as the other uses on the St. Monica campus.

Because the ordinance allowed consideration of approval of the proposed demolition of the convent only in conjunction with the approval of a specific site plan, and because the proposed site plan was denied, the demolition of the convent was also denied. The denial of demolition was made specifically without prejudice to the future consideration of the convent's demolition in connection with some future-proposed site plan. Because the possibility of the future demolition of the convent was not ruled out by this decision, the decision suggested that the parties might wish to undertake (or to allow an historic preservation or history institution to undertake) to photograph or otherwise document the convent building's exterior and/or interior architecture, in case of any further deterioration of the building during any further application process, regardless of when or whether such a future application may be filed, or its ultimate outcome.

2

<u>Appellants' Motion to Alter</u>

Appellants have moved to alter the Court's decision and order, in part seeking clarification of certain aspects of the decision, and in part seeking reconsideration of or alterations to the Court's factual findings on the historical significance of the convent and on an issue of the number of parking spaces.

A motion to alter or amend under Vermont Rule of Civil Procedure 59(e) is a vehicle that "allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." <u>Rubin v. Sterling Enterprises, Inc.</u>, 164 Vt. 582, 588 (1996). However, Rule 59(e) is considered an extraordinary remedy that should be used sparingly; the decision whether to grant such relief lies within the discretion of the trial court. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1; see <u>Rubin</u>, 164 Vt. at 588 (citing <u>In re Kostenblatt</u>, 161 Vt. 292, 302 (1994)).

Appellants first argue that the Court made incomplete findings under §10.2.07 of the Zoning Regulations. Appellants are correct that approval of a demolition requires the Court to find that "[t]he structure is determined to be a deterrent to a major improvement that will be a clear and substantial benefit to the community." However, before determining whether the structure sought to be demolished is a deterrent to a major improvement, and whether that specific proposed improvement will be a clear and substantial benefit to the community, the Court must determine what that specific proposed major improvement would be, and whether it, itself, qualifies for site plan approval. That is, approval of a proposed demolition cannot be considered in a vacuum; rather, as we ruled in the October 5, 2004 decision on Motions for Summary Judgment, at pp. 3–4, the Court first has to determine what the major improvement is, against which the proposed demolition is to be balanced, and to determine whether that particular major improvement will be a clear and substantial benefit to the community. In the present case,

3

while the Court did determine that it would benefit the municipality, as well as the users of the St. Monica campus, to move the currently chaotic and unsafe student drop-off and pick-up function onto the St. Monica campus, the Court did not approve a site plan that would accomplish that result. There is therefore nothing against which the proposal to demolish the convent can be balanced, and any further findings or conclusions under §10.2.07 would be premature and inappropriately advisory.

Appellants' second and third arguments relate to the Court's factual findings regarding the historical significance of the convent and the parking reconfiguration. The Court has fully reviewed the evidence and its findings regarding the historical significance of the convent building in the context of the other St. Monica campus buildings, and declines to alter those findings. However, we note that any future application for demolition of the convent will have to be reviewed in light of the particular on-site parking and circulation plan that is then proposed, if any.

The Court has also fully reviewed the evidence and its findings regarding the total number of parking spaces, and declines to alter those findings. However, we will publish today's order so that it is available to anyone reading the original decision. Appellants are correct that at least five parking spaces on Summer Street would be lost if the then-proposed site plan were implemented; however, the challenged finding is correct in that it refers to the total number of parking spaces associated with the property, considering together the sum of the available on-street and off-street (on-site) parking spaces. The issue of whether the City would find any number or configuration of new on-site spaces to be as good as or better than the lost off-site spaces will have to await a new proposal, if any. In fact, a redesigned proposal may involve an altogether different configuration of on-street and off street (on-site) spaces.

Appellants also request clarification of the Court's statement on page twenty-two of its decision related to documentation of the convent as it currently exists. As described

above, by that statement the Court was simply encouraging the parties to collaborate with respect to documentation of the architecture of the convent as it currently exists, regardless of any future redesigned site plans, or whether such plans may or may not call for the demolition of the convent building.

Appellants' Motion for Sanctions

Appellants' Supplemental Motion for Sanctions represents the culmination of a long history of discovery-related disputes in this case. On October 22, 2004, the Court issued a Discovery Order, stipulated by the parties, setting forth a pre-trial discovery schedule. Pursuant to the Order, the parties' first sets of written discovery requests were to be served by October 26, 2004 and responses were to be served by November 9, 2004. Any subsequent written discovery requests were to be served by November 16, 2004, with responses due by December 3, 2004. Any depositions were to take place between November 9 and 23, if possible, but in any event no later than December 3, 2004. All discovery was to be completed by December 8, 2004. Four days of trial were scheduled for mid-December 2004 based upon this schedule.

Appellee-Applicants' responses to Appellants' first set of discovery requests were served late and the responses did not contain the required level of detail regarding certain of Appellee-Applicants' designated witnesses' future testimony. This made it necessary for Appellants' counsel to engage in extensive written correspondence with counsel for Appellee-Applicants to attempt to obtain complete responses.

On November 30, 2004, this Court held a telephone conference to discuss the scope of the upcoming evidentiary hearings scheduled for mid-December of 2004, during which Appellee-Applicants also agreed to provide Appellants with complete responses to the outstanding discovery requests by December 3. As the information had not been provided by December 6, 2004, a week before the scheduled hearing on the merits was to begin,

5

Appellants moved to compel and for sanctions, seeking exclusion of certain witnesses from trial, or in the alternative, an order compelling Appellee-Applicants to provide the requested information, together with sanctions in the form of attorney fees. The Court held a telephone conference on December 7, at which the parties agreed to work together on the discovery issues, and to report back to the Court at yet another telephone conference held on December 9, and an additional telephone conference held with an audio tape record on December 10, at which the trial was rescheduled for four days in January, as the issues relating to discovery and the scope of the issues on appeal made it impractical to use the mid-December dates. Also at the December 10, 2004 telephone conference, the parties agreed regarding the scope and applicability of ten of the twelve review criteria potentially applicable to the proposed project, and the Court set a very short schedule for the filing of the parties' memoranda on the remaining disputed criteria, so as to meet the rescheduled trial dates. The Court ordered Appellee-Applicants to provide the requested information, and did not exclude any of Appellee-Applicants' witnesses, but postponed ruling on the request for monetary sanctions pending the hearing on the merits of the appeal.

The Court issued a written decision on the applicable review criteria on December 21, 2004. As Appellee-Applicants had not provided the requested information by December 22, 2004, Appellants filed a second motion to compel and for sanctions on that date, requesting an order awarding sanctions in the form of attorney fees, again without requesting a specific monetary amount. By December 22, 2004, Appellee-Applicants had provided responses to interrogatories for their experts Roger Dickinson and Greg Gossens, and for some of their fact witnesses. However, their responses regarding expert witnesses were incomplete, and they failed to respond with respect to experts Peter John, Edward Pearson,[1] and Dennis Webster. Appellee-Applicants also did not provide responses to

---

[1] Appellee-Applicants later withdrew this witness.

6

Appellants' interrogatories regarding fact witnesses Perry Browning, William Bond, Paul Hennessey, Fr. Peter Routhier, and Alfred Flory. Due to the renewed motion to compel and for sanctions, and the fact that the first date of the continued trial was scheduled for January 4, 2005, the Court held another telephone conference on December 27, 2004 to address the outstanding discovery issues and again ordered Appellee-Applicants' witnesses to provide complete responses to Appellants' discovery requests by December 30, 2004, so that the trial could commence as scheduled on January 4, 2005. The Court declined to exclude any witnesses, but advised the parties that the Court would impose monetary sanctions for the late disclosures in light of the trial date. The Court suggested that Appellants should wait until the close of trial to renew the motion for sanctions and to file a final accounting, once all the consequences of the discovery violations were known.

The hearing on the merits was held on four days in January of 2005, during which Appellee-Applicants' witnesses testified as to some evidence and expert opinions that had not previously been disclosed to Appellants. For example, on January 12, 2005, Appellee-Applicants' expert architect, Mr. Gossens, testified that he had site plans and sketches in his office files that had not been provided to Appellants. While Appellee-Applicants' traffic expert, Mr. Dickinson, also testified on that date as to errors in his calculations that had not been disclosed to Appellants prior to the hearing, he stated that he had only come to realize the error on the morning of that trial date. Nevertheless, those errors and the change in his testimony required Appellants' traffic expert to review the changed information at trial in order to be able to respond to it during the scheduled trial dates.

Incorporating the discovery issues that arose at trial, as well as this history of discovery disputes, Appellants filed the renewed motion for sanctions anticipated by the December 27, 2004 conference after the conclusion of the trial and the filing of the post-trial memoranda, seeking an award of attorney fees in the amount of $3,705.00 for attorney time

7

in preparation of the several discovery requests and motions for sanctions, and seeking an award of costs in the amount of $300.00 for the additional time of Appellants' expert necessitated by Appellee-Applicants' failure to supplement its expert reports in a timely fashion. After the decision on the merits of the matter, Appellee-Applicants were given an opportunity to file any response to the issues raised by the three motions for sanctions, or to the accounting filed with the second and third motions, but declined to do so.

The primary purpose of the civil discovery rules is to prevent surprises to one party by requiring both parties to disclose witnesses, prospective testimony and other evidence well in advance of trial. White Current Corp. v. Vermont Elec. Co-op., Inc., 158 Vt. 216, 223 (1992). In keeping with this principle, Vermont Rule of Civil Procedure 26(f) allows for the parties to frame a discovery plan, which the Court may then approve and enter as an order, as was done in the present case in the October 2004 order. Should a party fail to comply with the discovery order, V.R.C.P. 37 allows the opposing party to seek sanctions. V.R.C.P. 37(b)(2).

The rule allows a court great latitude in the form sanctions may take. The least onerous form of sanction provides for the offending party to reimburse the opposing party's expenses caused by the offending party's failure to cooperate, while more stringent orders could include prohibiting the introduction of evidence, or even ordering dismissal or a judgment by default in an appropriate case. Cine Forty-Second St. Theatre Corp. v. Allied Artists' Pictures Corp., 602 F.2d 1062, 1066 (2nd Cir. 1979) (interpreting identical federal rule); see V.R.C.P. 37(b)(2). Courts also possess broad powers to impose sanctions for litigation practices that "disrupt the administration of justice." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998). Thus, where even a negligent failure to produce discovery hinders a party's pursuit of the case, sanctions may be appropriate. Id. at 81 (noting that "[t]he timing of discovery is as important as its

content."). Further, if the offending party withholds key information that requires the opposing party to engage in discovery over and above that which would be required absent the delay, it is appropriate for the offending party to shoulder the expenses incurred in attempts by the opposing party to gain the requested information. Id. at 82.

In the present case, the Court gave Appellee-Applicants repeated opportunities to come into compliance, first with the parties' own stipulated discovery schedule, and then with several subsequent deadlines set by the Court. Appellee-Applicants' repeated failure to disclose witnesses, to provide responses to written discovery requests, and to produce documents to Appellants pursuant to the discovery scheduling order and the Court's subsequent discovery rulings caused Appellants to have to engage in discovery over and above what they would otherwise have had to seek had Appellee-Applicants followed the rules or sought extensions of the deadlines from the Court.

This behavior caused Appellants' counsel to have to repeatedly request information via telephone, electronic mail, and written letters, and to request the assistance of the Court through three written motions to compel or for sanctions and several oral arguments in the various pretrial conferences, to produce information which should have been timely provided in response to Appellants' original discovery requests and the various scheduling conferences. In addition to the pretrial work, at trial, Appellee-Applicants' last-minute production of documents relied upon by Appellee-Applicants' experts required Appellants to incur additional attorney fees to completely prepare their case, in addition to incurring modest additional expert witness costs for Appellants' expert to review some of the newly-produced information.

Appellee-Applicants have not disputed Appellants' factual allegations regarding the discovery violations and have not argued that the amount of fees or costs sought by Appellants is unreasonable. Appellee-Applicants have offered as a defense only the argument that Appellants were not prejudiced by Appellee-Applicants' delayed

9

production due to the lengthy history of the dispute, arguing that Appellants were therefore generally familiar with Appellee-Applicants' evidence and legal theories.

No matter how familiar Appellants and their counsel had become with the case, the prejudice Appellants suffered here was in the form of monetary loss due to the time expended by their attorney in repeatedly having to engage Appellee-Applicants' counsel and seek the assistance of the Court in an effort to extract information that Appellee-Applicants should have provided in response to written discovery requests, including the time required to prepare various motions to compel production of that information. Regardless of whether Appellants were generally familiar with Appellee-Applicants' arguments and evidence, Appellee-Applicants nevertheless were required by the rules to comply with the rules of discovery to avoid surprise or unnecessary delay. They did not do so in a timely fashion even after the trial was postponed to allow them to do so.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion to Alter is DENIED and Appellants' motion for sanctions is GRANTED. Judgment is hereby entered against Appellee-Applicants in the amount of $3,705.00 in attorney fees and $300.00 in costs.

Dated at Berlin, Vermont, this 10th day of October, 2006.

_____
Merideth Wright
Environmental Judge

10