381 F.Supp.2d 421 (2005)
In re: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION
This Document Relates to: Cheryl Yvonne Barnett
v.
Wyeth, et al.
No. 1203, No. CIV.A. 03-20460.
United States District Court, E.D. Pennsylvania.
May 25, 2005.
*422 Buffy K. Martines, O'Quinn Laminack & Pirtle, Dana A. Morris, O'Quinn Laminack & Pirtle, Richard N. Laminack, O'Quinn Laminack & Pirtle, Thomas Wayne Pirtle, O'Quinn Laminack & Pirtle, Houston, TX, for Cheryl Yvonne Barnett, Plaintiff.
Gail Dalrymple, Clark Thomas & Winters, Jane Elizabeth Bockus, Clark Thomas & Winters, San Antonio, TX, Kenneth Joseph Ferguson, Clark Thomas & Winters, Leslie Anne Benitez, Clark Thomas & Winters, Susan E. Burnett, Clark, Thomas & Winters, Austin, TX, for Wyeth Jointly and Severally formerly known as American Home Products Corporation, Wyeth Pharmaceuticals Jointly and Severally formerly known as Wyeth-Ayerst Laboratories Company Division of American Home Products Corporation, A.H. Robins Company, Inc. Jointly and Severally, L. Clayton Lacy Jointly and Severally, Frank Bedrick Jointly and Severally, Defendants.

MEMORANDUM AND PRETRIAL ORDER NO. 5261
BARTLE, District Judge.
Plaintiff, Cheryl Yvonne Barnett, has filed this action against Wyeth for damages arising out of her alleged ingestion of Wyeth's diet drug, Redux. Before the court is the motion of Wyeth to dismiss with prejudice because of fraud and to impose sanctions on plaintiff. In Pretrial Order ("PTO") No. 5096, we ordered counsel for plaintiff whose names appear on the complaint[1] to appear before the court and show cause why sanctions should not be imposed on them as well as on plaintiff.[2]See PTO No. 5096 (E.D.Pa. Apr. 28, 2005). Pursuant to PTO No. 5096, Richard N. Laminack, Esquire, who signed the complaint, appeared before this court on May 17, 2005 and accepted full responsibility for whatever acts or omissions are attributable to counsel.
Plaintiff, a citizen of Texas, filed this suit against Wyeth in the District Court of Bexar County, Texas, on May 27, 2003. The case was later removed to the United States District Court for the Western District of Texas and then transferred to the undersigned as the transferee judge in multi-district litigation ("MDL") 1203, the mass tort litigation involving Wyeth's diet drugs Pondimin and Redux. Plaintiff's complaint also named as defendants Wyeth's related companies, Wyeth Pharmaceuticals, Wyeth-Ayerst Laboratories, and A.H. Robins Company, Inc., as well as two non-diverse corporate employees of Wyeth. On April 18, 2005, we granted *423 Wyeth's unopposed motion to dismiss the corporate employees on the ground that they were fraudulently joined. See PTO No. 5006 (E.D.Pa. Apr. 18, 2005).
In her complaint, prepared and signed by her attorney, plaintiff alleges various state claims arising from her use of Redux. She avers that she "suffers from serious adverse health affects [sic] including heart valve damage" as a result of ingesting Redux "from February, 1989, through June, 1989." Compl. ¶¶ 3-5. Attached as exhibits to her complaint are copies of prescription records from Super S Pharmacy. The first one, dated February 12, 1989, is for 30 15MG Redux capsules and instructs plaintiff to "Take One Capsule Daily By Mouth For 30 Days." It also reads "Use Before 3/13/89." The second one, dated April 2, 1989, is for 60 15MG Redux capsules and advises plaintiff to "Take One Capsules [sic] Twice a Day By Mouth For 60 Days." It contains a "Use Before" date of 6/3/89. Both labels contain plaintiff's name, the address and phone number for Super S Pharmacy, and the name of the prescribing physician, Dr. Millenizer.
The complaint, it turns out, is false in three material respects. First, it is undisputed that Redux was not available in the United States until June, 1996. See In re Diet Drugs Prods. Liab. Litig., CIV.A. No. 99-20593, PTO No. 1415, 2000 WL 1222042, at *1 (E.D.Pa. Aug. 28, 2000). Accordingly, plaintiff could not have purchased Redux in Texas in 1989 as stated in her complaint. What is especially egregious is that her counsel knew that Redux was not marketed in this country until seven years after the dates that were included in the pleading he signed. Second, there is no Dr. Millenizer practicing medicine in Texas. The use of that name is obviously a fabrication.[3] Finally, there is no Super S Pharmacy at 3708 East Commerce Street, San Antonio, Texas. The address is a parking lot for a bar called the TNT Saloon, which is located at 3710 East Commerce Street. Since the 1970's, 3708 East Commerce Street has been a parking lot and 3710 East Commerce Street has been a bar or night club.[4] It goes without saying that plaintiff could not have had her prescriptions for Redux filled at the Super S Pharmacy described.
The fabrications were not limited to the complaint signed by counsel. They were repeated in other documents plaintiff's counsel submitted to Wyeth. As a prerequisite to initiating suit, plaintiff submitted a Blue Form[5] declaring her intent to register for benefits under the Nationwide Class Action Settlement Agreement ("Settlement Agreement") in In re Diet Drugs, Phentermine, Dexfenfluramine, Products Liability Litigation; Brown v. American Home Products Corporation, CIV.A. No. *424 99-20593, 2000 WL 1222042 (E.D.Pa. Aug. 28, 2000) (PTO No. 1415) and an Orange Form # 2, declaring her intent to exercise an intermediate opt-out from that settlement. Wyeth's Mot. to Dismiss, Exs. 8, 9. Both forms state that plaintiff is represented by attorney Richard Laminack. Plaintiff signed both her Blue Form and Orange Form under penalty of perjury attesting that she qualified for the benefits for which she was registering under the terms of the Settlement Agreement. This, of course, was not true. In addition, in or around August, 2004, over a year after the complaint was filed, plaintiff's counsel prepared and served on Wyeth her Fact Sheet, which contained the identity of her medical providers. See PTO Nos. 22, 155 and 2930. Her Fact Sheet falsely repeated that she was prescribed Redux in 1989 by "Dr. Millinizer" or "Dr. Millenizer."[6]See Barnett Fact Sheet at 11, 14; Wyeth's Mot. to Dismiss, Ex. 4.
Thereafter, in September, 2004, Wyeth noticed plaintiff's deposition twice. The first deposition, which was scheduled for September 2, was canceled at the request of plaintiff's counsel. Wyeth noticed plaintiff's deposition for the second time for September 16, 2004, but plaintiff and her counsel failed to appear. Plaintiff's counsel simply responded to the second notice of deposition by filing a motion to quash in which he stated that "the O'Quinn Firm [Mr. Laminack's firm] and Ms. Cheryl Barnett have reached an impasse in the prosecution of her case currently pending against Wyeth which will preclude the O'Quinn Firm's representation of Ms. Barnett in the future." Pl's Mot. to Quash at 2 dated Sept. 16, 2004.[7] However, plaintiff's counsel never advised Wyeth that the complaint or other documents served on Wyeth contained material fabrications. Nor did he take any steps at that time to withdraw as plaintiffs' counsel. On October 8, 2004, Wyeth filed a "motion to compel plaintiff's deposition as related to fraudulent claim that she was injured by ingesting Redux in 1989." Plaintiff's counsel did not respond to the motion.
At the recent hearing before this court, Mr. Laminack represented that late last summer when Wyeth brought the fraudulent claims to his attention, Mr. Laminack told Wyeth not to spend any more money on the case and not to work on the case because he "will make this case go away." (Tr. 5/17/05 at 65, 67). He also stated that he had told Wyeth that neither he nor plaintiff would appear at the deposition. (Tr. 5/17/05 at 69). Unfortunately, he did not "make this case go away" and thus forced Wyeth to spend more money. He took no action to withdraw as counsel or dismiss the case until May 13, 2005, after Wyeth had moved to dismiss and to obtain sanctions and after this court had entered PTO No. 5096 requiring plaintiff's counsel to appear and show cause why sanctions should not be imposed on them. On that date, plaintiff's counsel finally served on Wyeth a proposed stipulation of dismissal with prejudice. However, it provides that the parties would bear their own costs for the litigation. Wyeth opposes the proposed stipulation and contends that it is entitled to costs and fees associated with removing this case to federal court, pursuing discovery, doing an investigation, filing a motion to compel plaintiff's deposition, filing a motion to dismiss fraudulently *425 joined defendants, filing the instant motion for dismissal and sanctions, and other related work.
The United States Supreme Court has recognized that a court possesses inherent power to supervise and sanction parties who appear before it. See Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). While a court's authority to sanction a party or an attorney may come from the Federal Rules of Civil Procedure and/or another statutory provision, "[t]hese other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." Chambers, 501 U.S. at 46, 111 S.Ct. 2123.
The inherent powers of federal courts include the "well-acknowledged" power "to levy sanctions in response to abusive litigation practices." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (citations omitted). Among these sanctions are the ultimate sanction of dismissal and the less severe sanction of an assessment of attorney's fees. Id. at 45 (citations omitted). A court may assess attorney's fees against a responsible party "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or when it finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled." Id. at 45-46, 111 S.Ct. 2123 (citations omitted). The more drastic sanction of dismissal "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 866 (3d Cir.1984).
In Poulis, our Court of Appeals set forth the following criteria for considering whether dismissal is appropriate:
(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
747 F.2d at 868. "[N]ot all of the Poulis factors need be satisfied in order to dismiss a petition." Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992). Unlike Poulis, which involved the propriety of dismissal due to counsel's failure to meet court-imposed deadlines and other procedural requisites, here we are asked to dismiss this action for a far more serious reason, namely fraud. Our sister court in the Western District of Pennsylvania has found that "[w]here fraud on the court is the underlying misconduct upon which the district court is considering dismissal, a modified Poulis analysis provides the most suitable framework." Derzack v. County of Allegheny, Pa., 173 F.R.D. 400, 414 (W.D.Pa.1996). Where fraud is a factor, we must consider not only the prejudice to the "litigants but also the impact on the judicial system and the threat to the integrity of the courts." Id.
Considering all of the Poulis factors, it is clear that the "extreme sanction of dismissal" is warranted in this action. Poulis, 747 F.2d at 870. There is no question that plaintiff and plaintiff's counsel bear personal responsibility for initiating this action based on ingestion of a diet *426 drug long before it was on the market and attaching to the complaint manufactured prescription records prescribed by a non-existent physician. Poulis, 747 F.2d at 868. The fact that plaintiff's counsel's firm has filed around 3500 complaints in this MDL is no excuse. Both the Federal and Texas Rules of Civil Procedure require an attorney filing a pleading to make "an inquiry reasonable under the circumstances" to ensure that "the allegations and other factual contentions have evidentiary support" and that the complaint is "not groundless and brought in bad faith." Fed.R.Civ.P. 11; Tex.R. Civ. P. 13. There is no exception for mass filings. By signing a complaint based on a 1989 prescription for Redux, and continuing to pursue this baseless action for almost two years, counsel clearly violated his professional duties under these rules. He clearly engaged at the very least in "abusive litigation practices." Roadway Exp., 447 U.S. at 765, 100 S.Ct. 2455
Plaintiff's manufactured claims threaten "the public interest in preserving the integrity" of this diet drug litigation in particular and the judicial system as a whole. See Derzack, 173 F.R.D. at 415. This is not the first time individuals have made fraudulent misrepresentations that they have used diet drugs in an effort to obtain financial gain. Recently, the federal government has prosecuted individuals in Mississippi who forged pharmacy records to fabricate the basis for their actions against Wyeth. In our Memorandum and PTO No. 4567 approving the Seventh Amendment to the Settlement Agreement, we documented the history of claimants submitting echocardiograms that had been interpreted in a medically unreasonable manner. See PTO No. 4566 (E.D.Pa. Mar. 15, 2005). Like the fabricated prescription records in this case, claimants and their counsel submitted these medically unreasonable echocardiogram interpretations in an effort to claim settlement benefits they did not deserve. As noted in PTO 4567, the immeasurable time and resources the parties and this court have been required to devote to issues involving fraud in this diet drug litigation have resulted in serious delays in the payment of deserving claimants. The deliberate fabrication of plaintiff's prescription records, the address of the pharmacy, and the identity of the prescribing physician, the very evidence on which her claim is based, is obviously willful misconduct, which goes to the very heart of our judicial system. Poulis, 747 F.2d at 868. Accordingly, dismissal is the appropriate remedy.
Wyeth has also asked for costs and attorney's fees. Under United States Supreme Court precedent, "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 46, 111 S.Ct. 2123 (internal quotations and citations omitted). Here, there can be no doubt that an attempt was made to perpetrate a fraud upon Wyeth and the court. Regardless of the degree of culpability of plaintiff's counsel, he must share in the responsibility for filing a complaint and submitting forms to Wyeth based on allegations of diet drug use that he knew could not have taken place on the dates alleged. Moreover, despite the fact that Wyeth brought plaintiff's fraud to counsel's attention in its motion to compel plaintiff's deposition on October 8, 2004, counsel did not act to rectify the situation until the court ordered him to appear and show cause why sanctions should not be imposed. Only then did plaintiff's counsel serve Wyeth with a stipulation of dismissal on May 13, 2005. Even then he sought a dismissal with each side to bear its own costs.
For all the foregoing reasons, we will grant the motion of Wyeth to dismiss with *427 prejudice and will grant sanctions in the form of Wyeth's costs and attorney's fees against Cheryl Yvonne Barnett and Richard N. Laminack jointly and severally. Wyeth shall submit within 15 days affidavits containing in detail its costs and attorney fees. It shall identify the attorneys, the hourly rates, the number of hours worked, and a description of the specific work done. Plaintiff and plaintiff's counsel may submit responses within 15 days after service of Wyeth's affidavits.

PRETRIAL ORDER NO. 5261
AND NOW, this 25th day of May, 2005, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:
(1) the unopposed motion of Wyeth to dismiss with prejudice (Doc. # 8) is GRANTED. Sanctions in the form of costs and attorney's fees in an amount to be determined will be imposed jointly and severally on Cheryl Yvonne Barnett and Richard N. Laminack, Esquire;
(2) Wyeth shall submit within 15 days an affidavit or affidavits containing in detail its costs and attorney fees. It shall identify the attorneys, the hourly rates, the number of hours worked, and a description of the specific work done;
(3) plaintiff and plaintiff's counsel may submit responses within 15 days after service of Wyeth's affidavit(s);
(4) the motion of Wyeth "to compel plaintiff's deposition as related to fraudulent claim that she was injured by ingesting redux in 1989" (Doc. # 4) is DENIED as moot; and
(5) the unopposed motion of Wyeth for summary judgment (Doc. # 6) is DENIED as moot.
NOTES
[1] We recognize that plaintiff's first pleading in the Texas state court was denominated a "petition." See Tex.R. Civ. P. 45(a). For ease of reference, we are using the more common term, "complaint."
[2] The signature line of plaintiff's complaint bears the names and Texas Bar Association license numbers of four attorneys of the firm of O'Quinn, Laminack, and Pirtle: Richard N. Laminack, Thomas W. Pirtle, Dana A. Morris, and Buffy K. Martines.
[3] Wyeth has attached to its motion to dismiss an affidavit from Loris Jones, the Custodian of Records at the Texas State Board of Medical Examiners dated December 29, 2004. The affidavit states that Ms. Jones had searched the records on file in the office of the Board of Medical Examiners and that no license exists in the name of Dr. Millenizer. Wyeth's Mot. to Dismiss, Ex. 5.
[4] Wyeth has submitted the December 20, 2004 affidavit of Christina Alexandra, a licensed investigator in the state of Texas. In her affidavit, Ms. Alexandra states that she observed the parking lot and bar at 3708 and 3710 East Commerce Street and conducted a database search to locate the ex-owners and ex-leasers of these properties to discover that these addresses had been a parking lot and bar or night club since the 1970's. Wyeth's Mot. to Dismiss, Ex. 7.
[5] Notably, plaintiff's Blue Form states that she was prescribed and took both Pondimin and Redux. However, her complaint contains no specific allegations that she ingested Pondimin.
[6] The spelling of her alleged physician's name in plaintiff's Fact Sheet is inconsistent.
[7] According to Wyeth, on the afternoon of September 15, 2004, plaintiff's counsel faxed to Wyeth a copy of the "motion to quash the notice of deposition." See Wyeth's "motion to compel plaintiff's deposition as related to fraudulent claim that she was injured by ingesting Redux in 1989" at 5.